IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

PAICE LLC, *et al.*,

      Plaintiffs,

      v.

HYUNDAI MOTOR COMPANY, *et al.*,

      Defendants.

CIVIL NO.: WDQ-12-0499

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Paice LLC ("Paice") and The Abell Foundation, Inc. ("Abell") (collectively, the "Plaintiffs") sued Hyundai Motor Company, Hyundai Motor America (together, "Hyundai"), and others[1] (collectively, the "Defendants") for patent infringement.  For the following reasons, the Defendants' motion to dismiss the willful infringement claims will be denied.

---

[1] The other defendants are Kia Motors Corporation and Kia Motors America, Inc. (together, "Kia").  Am. Compl.

I.   Background[2]

   A. The Parties

      Paice is a Delaware limited liability company with a place

of business in Bonita Springs, Florida.  Am. Compl. ¶ 1.  Since

Paice was established in 1992 by Doctor Alex J. Severinsky, the

company has developed "innovative hybrid electric technology" to

promote fuel efficiency, lower emissions, and "superior driving

performance."  Id.  According to Paice, its hybrid patents are

"well known" in the automotive industry.  Id. ¶ 28.[3]  Abell, a

Maryland corporation, is a nonprofit charitable organization

whose objectives include increasing energy efficiency and

producing alternative energy.  Id. ¶ 2.  In 1998, Abell was

introduced to Paice and has since become an equity owner of the

company.  Id.  Hyundai Motor Company and Kia Motors Corporation

are Korean companies.  Id. ¶¶ 3-4.  Hyundai Motor America is a

California subsidiary of Hyundai Motor Company, id. ¶ 5; Kia

Motors America, Inc. is a California subsidiary of Kia Motors

---

[2] For the motion to dismiss, the well-pled allegations in the
complaint are accepted as true.  Brockington v. Boykins, 637
F.3d 503, 505 (4th Cir. 2011).  The Court will consider the
pleadings, matters of public record, and documents attached to
the motion that are integral to the complaint and whose
authenticity is not disputed.  See Philips v. Pitt Cnty. Mem'l
Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

[3] For instance, in 2010, IP firm Griffith Hack published a study
in which it found that Paice owns four of the world's 10 most
dominant hybrid vehicle patents.  Am. Compl. ¶ 28.

Corporation, *id.* ¶ 6.   Hyundai and Kia are "related companies" and share information and technology.   *Id.* ¶ 32.

B. The Patents in Suit

Paice and Abell are co-owners by assignment of the entire right, title, and interest in and to U.S. Patent Nos. 6,209,672 (the "'672 patent");[4] 7,104,347 (the "'347 patent");[5] 7,237,634 (the "'634 patent");[6] and 7,559,388 (the "'388 patent")[7] (collectively, the "patents in suit").   Am. Compl. ¶¶ 11-14. The '347, '634, and '388 patents issued from continuation-in-part applications relating to the '672 patent.   *Id.* ¶ 14.   The '672 patent is entitled "Hybrid Vehicle" and protects a "hybrid electric vehicle that is fully competitive with presently conventional vehicles as regards performance, operating convenience, and cost, while achieving substantially improved fuel economy and reduced pollutant emissions."   '672 patent, Col. 1, ll.13-18.[8]

---

[4] The '672 patent issued on April 3, 2001.   Am. Compl. ¶ 14.

[5] The '347 patent issued on September 12, 2006.   *Id.* ¶ 12.

[6] The '634 patent issued on July 3, 2007.   *Id.* ¶ 11.

[7] The '388 patent issued on July 14, 2009.   *Id.* ¶ 13.

[8] The '672 patent is attached to the amended complaint at ECF No. 27-2.

C. Paice's Communications with Hyundai and Kia

In 2002, Paice began contacting Hyundai and Kia employees to offer to discuss its patented hybrid technology.  Am. Compl. ¶ 15.  On September 18, 2002, Professor Ulrich Seiffert introduced Hyundai Motor Corporation's Senior Executive Vice President[9] Doctor H. S. Lee to Paice after learning that Lee was interested in hybrid vehicle technology.  *Id.* ¶ 16.  On September 26, 2002, Severinsky emailed Lee and offered to discuss Paice's hybrid technology and work together in developing a hybrid vehicle using that technology.  *Id.* ¶ 17; *see* ECF No. 27-3 at 1.[10]  Severinsky told Lee that Paice had "built and tested a prototype drivetrain that proved our technology and patents."  ECF No. 27-3 at 1.  Severinsky directed Lee to the papers and materials on Paice's website, and attached a copy of the paper Severinsky was planning to present at an SAE[11] conference later that month.  *Id.*[12]

On April 27, 2004, Paice employee Nathanael Adamson emailed Hyundai Motor America's Vice President of Product Development

---

[9] Lee later became Vice Chairman of the Hyundai Kia Motor Research and Development Center.  Am. Compl. ¶ 16.

[10] The amended complaint mistakenly asserts that the communication occurred on October 3, 2002.  *Id.* ¶ 17.

[11] "SAE" stands for "Society of Automotive Engineers."

[12] The SAE paper was published a few weeks later.  Am. Compl. ¶ 18.  The paper described Paice's hybrid technology and referred to several Paice patents, including the '672 patent.  *Id.*

and Strategic Planning John Krafcik.  Am. Compl. ¶ 19; *see* ECF
No. 27-3 at 2.[13]  Adamson told Krafcik that Paice held "several
fundamental patents for the method of hybrid system control;"
Paice was "prepared to selectively license the proprietary
method of control technology;" and Paice would "value" Hyundai
as a client for the Paice system.  ECF No. 27-3 at 2.  On May 8,
2004, Adamson offered to meet with Krafcik to discuss Paice's
patented technology.  Am. Compl. ¶ 20; ECF No. 27-3 at 4-5.  In
particular, Adamson told Krafcik that some of the claims
associated with the patents included:

- Method of engine control under which torque is
  always above a set value, regardless of mode of
  operation
- Method of mode control via road load
- Safe connection of the vehicle high voltage battery
  sub-system
- Maximum battery current (minimum voltage)

ECF No. 27-3 at 4.  Adamson also told Krafcik that, if Hyundai
purchased a license, Paice could provide engineering services on
a "time and material basis."  *Id.*  Krafcik responded that
communications about Paice's technology should be directed to
the Hyundai American Technical Center, and identified Product

---

[13] Krafcik is currently Hyundai Motor America's President and
CEO.  *Id.*

Planning Department employee Skip Hires as a contact.  Am.
Compl. ¶ 21.[14]

On September 10, 2004, Adamson contacted Hires and relayed
the same information that he had earlier provided to Krafcik.
Am. Compl. ¶¶ 20-22; ECF No. 27-3 at 7.  In addition, Adamson
told Hires that Paice's business model includes sharing its
proprietary technology with automakers through licensing
arrangements.  Am. Compl. ¶ 22.  From September through November
2004, Adamson sent follow-up communications to Hires regarding
Paice's interest in developing its technology for Hyundai and
Kia vehicles and thanking Hires for forwarding Paice's
information to the relevant people in Korea.  *Id.* ¶ 23; *e.g.*,
ECF No. 27-3 at 9, 10.

On November 9, 2006, Adamson resumed communications with
Krafcik, reminding him of Paice's hybrid vehicle patents and
reiterating Paice's interest in licensing to Hyundai.  Am.
Compl. ¶ 24; ECF No. 27-3 at 11.  In particular, Adamson stated:

> Paice holds a number of patents and considerable know-
> how associated with the design of optimum hybrid
> systems.   Paice's patents and know-how relate to,
> among other aspects, system voltage and the method of
> control  over  the  system  elements  and  their
> interrelated functions.   These areas are fundamental
> to the achievement of an optimum hybrid vehicle.   As
> an enterprise, our business model is quite simple: we
> are anxious to license our technology for reasonable

---

[14] Hires is currently Hyundai Kia America Technical Center's
Senior Product Manager.  Am. Compl. ¶ 21.

compensation and we can provide certain technical
assistance to a licensee when needed.

ECF No. 27-3 at 11.   In the same letter, Adamson asserted that

the "strength" of Paice's approach for control of hybrid motor

vehicles was "best demonstrated" by a December 2005 jury verdict

in the U.S. District Court for the Eastern District of Texas

that Toyota's[15] Prius II and "other hybrid models" had infringed

Paice's patent rights.   *Id.*   The Toyota litigation involved the

'672, '347, and '634 patents.   Am. Compl. ¶ 27.   Adamson sent

follow-up communications to Krafcik through December 2007.   *See*

*id.* ¶ 26; ECF No. 27-3 at 13-18.   At a conference in August

2010, Krafcik congratulated Adamson on Paice's recent settlement

with Toyota.   Am. Compl. ¶ 27.

"On information and belief, [the Defendants'] acts of

infringement have been willful and are made with knowledge of

Plaintiffs' rights in the [patents in suit].   Such acts

constitute willful and deliberate indifference, entitling

Plaintiffs to enhanced damages and reasonable attorney fees."

*See* Am. Compl. ¶¶ 41, 48, 55, 62, 69, 76, 83, 90.

D. Procedural History

On February 16, 2012, the Plaintiffs filed suit against the

Defendants for directly, indirectly, and willfully **infringing**

the '634, '347, and '388 patents, in violation of 35 U.S.C. §

_____

[15] Toyota competes with Hyundai and Kia in the hybrid vehicle
market.   Am. Compl. ¶ 30.

271.  ECF No. 1.  On March 20, 2012, the parties stipulated to, and the Court approved, an extension of time to respond to the complaint.  ECF Nos. 5, 8.  On May 22, 2012, the Defendants timely moved to dismiss.  ECF No. 14.  On June 8, 2012, the Plaintiffs opposed the motion and moved for leave to file an amended complaint.  ECF No. 24.  On June 13, 2012, the Court denied the Defendants' motion to dismiss as moot and deemed the proposed amended complaint filed as of June 13, 2012.  ECF No. 26.  Also on June 13, the Plaintiffs filed the first amended complaint.  ECF No. 27.[16]  On June 27, 2012, the Defendants moved to dismiss for failure to state a claim.  ECF No. 29.  On July

---

[16] The amended complaint alleged eight causes of action:
  (1) Direct, indirect, and willful infringement of the '634 patent, against Hyundai (Count One)
  (2) Direct, indirect, and willful infringement of the '634 patent, against Kia (Count Two)
  (3) Direct, indirect, and willful infringement of the '347 patent, against Hyundai (Count Three);
  (4) Direct, indirect, and willful infringement of the '347 patent, against Kia (Count Four);
  (5) Direct, indirect, and willful infringement of the '388 patent, against Hyundai (Count Five);
  (6) Direct, indirect, and willful infringement of the '388 patent, against Kia (Count Six);
  (7) Direct, indirect, and willful infringement of the '672 patent, against Hyundai (Count Seven); and
  (8) Direct, indirect, and willful infringement of the '672 patent, against Kia (Count Eight).
ECF No. 27 ¶¶ 36-90.  The complaint sought judgments that Hyundai and Kia infringed the patents in suit; compensatory damages; pre- and post-judgment interest; attorney's fees; and a permanent injunction prohibiting further infringement (or, alternatively, determination of an ongoing royalty).  *Id.* at 27-28.

16, 2012, the Plaintiffs opposed the motion.  ECF No. 30.  On

July 30, 2012, the Defendants replied.  ECF No. 31.

## II.  Analysis

### A. Legal Standard

"A motion to dismiss for failure to state a claim . . . is

a purely procedural question not pertaining to patent law."

*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir.

2007).  Accordingly, Fourth Circuit law, rather than Federal

Circuit law, governs.  *See id.* at 1356.[17]

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed

for failure to state a claim upon which relief can be granted.

Rule 12(b)(6) tests the legal sufficiency of a complaint, but

does not "resolve contests surrounding the facts, the merits of

a claim, or the applicability of defenses."  *Presley v. City of

Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a

"short and plain statement of the claim showing that the pleader

is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l

Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's

---

[17] The Fourth Circuit has "not yet considered a motion to dismiss
in a patent case with the benefit of the Supreme Court's
precedent in *Twombly* and *Iqbal*.  The Federal Circuit, however,
offered guidance in *McZeal*," and courts within the Fourth
Circuit have relied on that guidance.  *Adiscov, LLC v. Autonomy
Corp.*, 762 F. Supp. 2d 826, 829-32 (E.D. Va. 2011); *see also
Wright Mfg. Inc. v. Toro Co.*, No. 11-1373-MJG, 2011 WL 6211172,
at *1 (D. Md. Dec. 13, 2011).

notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B. The Motion to Dismiss

The Defendants argue that the Plaintiffs' claims for willful infringement should be dismissed because the Plaintiffs "have alleged no facts that would support an allegation that Defendants acted with reckless disregard for the possibility that they infringed the asserted patents." ECF No. 29-1 at 2.

Further, the Defendants characterize as "deficient" the Plaintiffs' allegations about the Defendants' knowledge of the patents in issue.  *Id.*  The Plaintiffs object that the Defendants "improperly conflate[] pleading and proof requirements."  ECF No. 30 at 5.

"A finding of willful infringement allows an award of enhanced damages under 35 U.S.C. § 284."  *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012).  Section 284 permits a court to "increase the damages up to three times the amount found or assessed."

"[A] party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge."  *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990).  To prove a cause of action for willful infringement, a patent owner must demonstrate infringement, and that (1) "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and (2) "this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer."  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).  "If the first prong cannot be shown, then the court should not put the issue of willfulness--including the second "subjective" prong--before a jury."  *Execware, LLC v.*

*Staples, Inc.*, No. 11-836-LPS-SRF, 2012 WL 6138340, at *5 (D. Del. Dec. 10, 2012).[18]

"[Although] ultimately a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent, this is an evidentiary burden, not a pleading standard." *Pecorino v. Vutec Corp.*, No. 11-CV-6312 (ADS) (ARL), 2012 WL 5989918, at *24 (E.D.N.Y. Nov. 30, 2012).[19]   Unfortunately, "there is a lack of complete uniformity

---

[18] *See also Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011) ("Should the court determine that the infringer's reliance on a defense was not objectively reckless, it cannot send the question of willfulness to the jury, [because] proving the objective prong is a predicate to consideration of the subjective prong.").

[19] *See also, e.g., Sony Corp. v. LG Elecs. U.S.A., Inc.*, 768 F. Supp. 2d 1058, 1064 (C.D. Cal. 2011) ("plaintiff need not allege specific facts establishing objective recklessness under *Seagate*"); *Milwaukee Elec. Tool Corp. v. Hitachi Koki, Ltd.*, No. 09-C-948, 2011 WL 665439, at *3 (E.D. Wis. Feb. 14, 2011); ("The defendants' reliance on *Seagate* for purposes of their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is misplaced. Although the defendants properly assert that *Seagate* sets forth the standard for establishing willful infringement, the defendants fail to recognize that *Seagate* is not controlling for purposes of pleading under Fed. R. Civ. P. 8(a)."); *Advanced Analogic Techs., Inc. v. Kinetic Techs., Inc.*, No. C-09-1360 MMC, 2009 WL 1974602, at *2 (N.D. Cal. July 8, 2009) (rejecting defendant's reliance on *Seagate* because it addressed "the 'evidence' necessary 'to establish' willful infringement, not the prerequisites for pleading willful infringement"); *Jardin v. Datallegro, Inc.*, No. 08cv1462-IEG-RBB, 2009 WL 186194, at *7 (S.D. Cal. Jan. 20, 2009) ("*Seagate* only addressed what is necessary to prove a claim of willfulness, not whether a plaintiff has sufficiently alleged willful infringement as a pleading matter."); *Rambus v. Nvidia Corp.*, No. C-08-3343 SI,

in recent district court authority addressing willful infringe-
ment claims in light of *Twombly and Iqbal.*"  *Sony Corp.*, 768 F.
Supp. 2d at 1064 (internal quotation marks omitted).  "[C]ourts
have generally required a complaint to allege facts that, at a
minimum, show direct infringement, *i.e.,* that identify the
patent in suit, and show the defendant's actual knowledge of the
existence of the patent."  *Gradient Enters., Inc. v. Skype
Techs. S.A.*, 848 F. Supp. 2d 404, 409 (W.D.N.Y. 2012); *see id.*
(collecting cases).  Mere knowledge of the *pendency* of patent
applications does not suffice.[20]

The motion to dismiss will be denied.  As the Defendants
acknowledge, Rule 8(a)--and Fourth Circuit caselaw interpreting
that rule--governs the sufficiency of the allegations in the
complaint.  *McZeal*, 501 F.3d at 1355-56; *see* ECF No. 29-1 at 7
n.3.  Rule 8(a)(2) requires only a "short and plain statement of
the claim showing that the pleader is entitled to relief."
*Migdal*, 248 F.3d at 325-26.  For a complaint to adequately state
willful infringement, it must allege facts that, "at a minimum,
show direct infringement, *i.e.,* that identify the patent in
suit, and show the defendant's actual knowledge of the existence

---

2008 WL 4911165, at *2 (N.D. Cal. Nov. 13, 2008) (rejecting
defendant's reliance on *Seagate* because it addressed what is
necessary to prove, not plead, a claim of willfulness).

[20] *E.g.*, *IpVenture, Inc. v. Cello P'ship*, No. 10-CV-04755-JSW,
2011 WL 207978, at *2 (N.D. Cal. Jan. 21, 2011).

of the patent." *Gradient Enters., Inc.*, 848 F. Supp. 2d at 409; *see also id.* (collecting cases).

The Plaintiffs have alleged that, from as early as September 2002 and through December 2007, Paice repeatedly contacted the Defendants to offer to discuss "its *patented hybrid technology*." Am. Compl. ¶ 15 (emphasis added). In 2002, Severinsky contacted then-Senior Executive Vice President of Hyundai Motor Corporation Lee; Severinsky informed Lee that Paice had "built and tested a prototype drivetrain that proved our technology and patents," and directed Lee to papers and materials on Paice's website, as well as a paper referencing the '672 patent. *Id.* ¶¶ 16-18. In 2004, Paice employee Adamson contacted then-Vice President of Product Development and Strategic Planning for Hyundai Motor America Krafcik. *Id.* ¶ 19. Adamson told Krafcik that Paice held "several *fundamental patents*" for the method of hybrid system control, and even told him about the claims associated with the patents. *Id.* ¶¶ 19, 20 (emphasis added). Adamson gave similar information to a member of Hyundai American Technical Center's Product Planning Department. *Id.* ¶¶ 21-23. Adamson followed up with Krafcik in 2006 and 2007. *Id.* ¶¶ 24-26. In a November 9, 2006 letter to Krafcik, Adamson referenced Paice's litigation against Toyota. *Id.* ¶ 25. That litigation involved three of the patents in suit. *Id.* ¶ 27.

14

The Defendants admit that the Plaintiffs have alleged knowledge of the '672 patent, but contend that "nothing" in the amended complaint "would support any inference" that the Defendants had knowledge of the other patents in suit.  ECF No. 29-1 at 9.  The Defendants emphasize that they "could not" have had knowledge of the '388 patent "based on any communications from [the] Plaintiffs," because the last alleged communication from Paice was on December 2, 2007.  *Id.*  The Court does not agree.  Given the frequent and detailed communications between Paice and the Defendants, which spanned five years and included discussions about pending litigation involving three of the four patents in suit, a reasonable inference can be drawn that the Defendants were aware that the patents in suit existed.  *See Iqbal*, 556 U.S. at 678.

Of course, the Plaintiffs' claims may not survive summary judgment.  This Court finds only that the allegations in the amended complaint are sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.[21]  The

---

[21] *Cf., e.g., Sentry Protection Prods., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005) (willful infringement sufficiently pled when plaintiff alleged that the infringements "have been willful and with full knowledge of the [patents in suit]"); *Investpic, LLC v. FactSet Research Sys., Inc.*, No. 10 Civ. 1028, 2011 WL 4591078, at *2 (D. Del. Sept. 30, 2011) (plaintiff's allegation that the defendants "knew" of the patent, because the patent was "well-known in the industry-- having been cited by at least 79 issued U.S. patents since 2001," was sufficient to support claim of willful infringement);

law does not require more.[22]   The motion to dismiss will be

denied.[23]

III. Conclusion

    For the reasons stated above, the Defendants' motion to

dismiss will be denied.

_____3/27/13_____               _____

Date                             William D. Quarles, Jr.
                             United States District Judge

---

*Oracle Corp. v. DrugLogic, Inc.*, 807 F. Supp. 2d 885, 902 (N.D. Cal. 2011) (plaintiff "state[d] sufficient facts to support a claim for willful infringement" by alleging that the defendant was "aware" of the relevant patent and had "actual notice" of the infringement claims").

[22] Quoting *Weyer v. MySpace, Inc.*, No. 10-0499, 2010 WL 8445305, at *4 (C.D. Cal. June 17, 2010), the Defendants insist that the Plaintiffs have not stated a claim because they did not allege facts specifically showing that the Defendants "recklessly disregarded the possibility that certain conduct was infringing." *See* ECF No. 29-1 at 7; ECF No. 31 at 10.  According to the Defendants, this omission is "fatal" to the Plaintiffs' willful infringement claims.  *See* ECF No. 29-1 at 8.  However, there is substantial authority that such allegations--although necessary to prove willful infringement under *Seagate*--are not required to survive dismissal at the pleading stage.  *See, e.g.,* *Sony Corp.*, 768 F. Supp. 2d at 1064; *Milwaukee Elec. Tool Corp.*, 2011 WL 665439, at *3; *Advanced Analogic Techs., Inc.*, 2009 WL 1974602, at *2; *Jardin*, 2009 WL 186194, at *7; *Rambus*, 2008 WL 4911165, at *2.  *But see Classen Immunotherapies, Inc. v. Biogen IDEC*, No. WDQ-04-2607, 2012 WL 1963412, at *10-11 (D. Md. May 30, 2012) ("[M]ere knowledge of the patents in suit, without an allegation that [the defendant] acted in reckless disregard of a possibility that it was infringing them, does not support a claim for willful infringement." (*citing Seagate*, 497 F.3d at 1371)).

[23] The Court need not address the Plaintiffs' alternative argument that the Defendants' motion is "procedurally barred" because it is based on facts and information available to the Defendants when they moved to dismiss before the complaint was amended.  *See* ECF No. 30 at 5, 9-12.