IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAICE, LLC, et al.,                    *

     Plaintiffs                        *

     v.                                *        CIVIL NO.  WDQ-12-499

HYUNDAI MOTOR COMPANY, et al.,    *

     Defendants.                       *

     *     *     *     *     *     *     *     *     *     *     *     *

<u>MEMORANDUM OPINION AND ORDER</u>

Now pending before the Court is intervenor Toyota's Motion for a Protective Order (ECF No. 177) and Plaintiffs' Motion to Compel Non-Party Toyota to Comply with Subpoenas (ECF No. 251).

This Court granted non-party Toyota Motor Company and its affiliates' (collectively "Toyota") motion to intervene (ECF No. 111) in order to oppose Defendants' then pending motion to compel (ECF No. 108).  (ECF No. 112).  Defendants' motion to compel sought certain Toyota litigation materials from Plaintiff Paice's prior collateral litigation with Toyota ("Paice-Toyota litigation"), such as expert reports (including technical, damages, and other reports), expert deposition transcripts, materials cited in those reports and transcripts, and settlement agreements, which Defendants had sought in their request for production of documents.  (ECF No. 108).  On April 4, 2014, the

1

Court entered a stipulation and order (ECF No. 171), wherein Defendants withdrew their motion to compel and Toyota agreed to produce certain of the aforementioned litigation documents. (ECF No. 171). Notably, however, the stipulation provided that Toyota would not produce to Defendants the Settlement Agreement which resolved the Paice-Toyota litigation ("Paice-Toyota Settlement Agreement" or "Agreement"). (ECF No. 171, 13). Subsequently, Defendants expressly withdrew their document request directed to the Settlement Agreement or to the disclosure of its terms. (ECF No. 177, Ex B). Defendants also abandoned in their motion to compel (ECF No. 184), certain financial documents from Plaintiffs essentially revealing the monetary terms of the Paice-Toyota Settlement Agreement. (ECF No. 244, 3). Nonetheless, thereafter, Paice stated its intention to "disclose the Settlement Agreement in litigation pursuant to the terms of Section 5.9(b)(1)[of the Settlement Agreement]." (ECF No. 177, Exh. A). Consequently, Toyota filed the present motion for a protective order seeking to prohibit Paice from disclosing and using the Paice-Toyota Settlement Agreement in the present case. Briefing is complete. (ECF Nos. 186, 209). A hearing was held on this motion on May 13, 2014. At the May 13, hearing, the Court stated its tentative conclusion that, as a matter of contract law, Paice had contracted away its right to disclose and use the Settlement

2

Agreement in this instant litigation against Hyundai.

Thereafter, on May 14, 2014, Paice and Abell served subpoenas on Toyota Motor Corporation and Toyota Motor Sales, USA ("Toyota") (ECF No. 235) requesting production of the 2010 Settlement Paice-Toyota Agreement. (ECF No. 251). Toyota objected to the subpoenas. Paice and Abell filed a motion to compel non-party Toyota to comply with the subpoenas (ECF No. 251). Briefing is now complete on that motion as well. (ECF No. 251, 282, 304, 321).

For the reasons discussed herein, Toyota's motion for a protective order (ECF No. 177) is GRANTED, insofar as Paice is not permitted to disclose and use the Settlement Agreement under the confidentiality provision in the Settlement Agreement. However, the motion of Abell, but not Paice, to compel (ECF No. 251) is GRANTED as Abell is not bound by the confidentiality provision as a matter of contract law or substantive patent law. While the Court has grave reservations regarding the ultimate admissibility of the Agreement and/or expert reliance on the same in any damages analysis, in light of the broad scope of discovery under Rule 26 and the governing case law, Abell is entitled to discovery of the Settlement Agreement. The question of admissibility is properly reserved for the trial judge.

## I.  Discussion

### A. Motion for Protective Order

Vis a vis Paice, Toyota's motion for protective order asserts two bases for the protective order precluding the disclosure and/or use of the Paice-Toyota Settlement Agreement in the instant litigation: (1) that the terms of the Agreement clearly prohibit disclosure by Paice; and (2) that the Agreement is irrelevant pursuant to Fed. R. Evid. 403, and therefore, should not be "discovered" or disclosed pursuant to Fed. R. Civ. P. 26(b).[1]  (ECF No. 177, 3-7).  Plaintiffs dispute Toyota's strict reading of the Agreement and contend that "discoverability," not "admissibility," is the standard the Court should consider at this stage in the litigation.  (ECF No. 186, 11-22).

### (1)  Confidentiality of the Paice-Toyota Settlement Agreement

Toyota principally contends that the terms of the Paice-Toyota Settlement Agreement ███████ ████ ███ ████████ █ (ECF No. 177, 3).  Conversely, Paice argues that ██████████ ████████████████ █████████████████ ██ ██ ████ █ ███████ (ECF No. 186, 13) and

---

[1] The Court has determined that this is less a matter of discovery, at least as to Paice, as Paice already has the Settlement Agreement, than a matter of Paice's right to use the Settlement Agreement in this litigation in any way, including provision to its damages expert and its eventual admission into evidence.

that the protective order already in place in this case would
address any of Toyota's confidentiality concerns. <u>Id.</u> at 11
Paice and Toyota each direct the Court to Section 5.9
(Confidentiality) of the Agreement, which states as follows:



(ECF No 177, 3; ECF No. 186, 8).

This Settlement Agreement is, of course, a contract and, as
such, subject to contract principles in its construction.
<u>Loppert v. WindsorTech, Inc.</u>, 865 A.2d 1282, 1285 (Del. Ch.
2004) aff'd sub nom. <u>Windsortech, Inc. v. Loppert</u>, 867 A.2d 903
(Del. 2005) (citing <u>Heiman Aber & Goldlust v. Ingram</u>, 1998 WL

442691, at *2 (Del.Super. May 14, 1998)).   The Agreement provides that the law of the District Court for the District of Delaware shall govern, except for choice of law provisions. Settlement Agreement, 5.10.   The parties agree that under this provision, Delaware state law controls the interpretation of the Agreement.  (ECF Nos. 246 and 247).[2]

The primary consideration in interpreting a contract is to "attempt to fulfill, to the extent possible, the reasonable shared expectations of the parties at the time they contracted." See Comrie v. Enterasys Networks, Inc., 837 A.2d 1, 13 (Del.Ch. 2003).   In ascertaining intent, Delaware courts adhere to the "objective" theory of contracts.   See Haft v. Haft, 671 A.2d 413, 417 (Del.Ch.1995); Cordis Corp. v. Boston Scientific Corp.,

---

[2] Paice qualified its position on the applicability of Delaware law to the interpretation of 5.10: before Delaware law can be found to apply, "[t]he Court must next consider Maryland choice of law provisions to determine if Section 5.10 should be given any effect."  (ECF No. 247, 1-2).   In deciding matters of state law, such as those arising pursuant to a breach of contract, federal courts apply the choice-of-law rules of the forum state, which in this case is Maryland.   See Wells v. Liddy, 186 F.3d 505, 521 (4th Cir. 1999)(citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496-97 (1941)).   Under Maryland law, "[i]t is now generally accepted that the parties to a contract may agree as to the law which will govern their transaction, even as to issues going to the validity of the contract." Kronovet v. Lipchin,415 A.2d 1096, 1104 (Md. 1980); see also Nat'l Glass, Inc. v. J.C. Penny Properties, Inc., 650 A.2d 246, 248 (Md. 1994).   Further, courts typically need not inquire into the validity of choice of law provisions where the parties agree the law of a particular state governs their claims.   See Vanderhoof-Forschner v. McSweegan, Nos. 99-1615, 99-1616, 2000 WL 627644, at *2 n.3 (4th Cir. May 16, 2000)(citation omitted); Novell, Inc. v. Microsoft Corp., 429 Fed.Appx. 254, 258-61 (4th Cir. 2011)(applying Utah law to a contract dispute without conducting a choice-of-law analysis); Chubb & Son v. C&C Complete Serv., 919 F. Supp.2d 666, 675 (D. Md. 2013). Here, the Paice-Toyota Settlement Agreement contains a choice-of-law provision providing that the laws of the U.S. District Court for the District of Delaware shall govern any disputes arising out of or relating to the Agreement.   The Court finds under Maryland choice of law provisions, that Section 5.10 should be honored.

868 F. Supp. 2d 342, 351-52 (D. Del. 2012) aff'd in part, vacated in part, 504 F. App'x 922 (Fed. Cir. 2013)

"When interpreting a contract, the court's ultimate goal is to determine the parties' shared intent. Because Delaware adheres to the objective theory of contract interpretation, the court looks to the most objective indicia of that intent: the words found in the written instrument. As part of this initial review, the court ascribes to the words their 'common or ordinary meaning,' and interprets them as would an 'objectively reasonable third-party observer.' When the plain, common, and ordinary meaning of the words lends itself to only one reasonable interpretation, that interpretation controls the litigation." Sassano v. CIBC World Markets Corp., 948 A.2d 453, 462 (Del. Ch. 2008). (footnotes omitted)

The "parties' intent [in contracting] is ascertained by a reasonable reading of the plain language," construing the document as a whole. Sussex Equipment Co. v. Burke Equipment Co., 860 A.2d 812 (Table), 2004 WL 2423841 (Del.2004). If the language is accessible in this manner, there is no need to go outside it searching for the parties' intent; the clear, simple and unambiguous language is given force and effect. Hibbert v. Hollywood Park, Inc., 457 A.2d 339, 342-43 (Del.1983); Chambers v. Genesee & Wyoming Inc., CIV.A. 354, 2005 WL 2000765 (Del. Ch. Aug. 11, 2005).

Neither side has claimed that this provision is ambiguous. Both claim the language clearly supports its position. Paice argues that "[t]he plain intent of the confidentiality clause is to ██████ ██ ██████ ██████ █ ██████ █ ██████ ██ ██████ ██ ██████ ████████ (ECF No. 186, 13).

The Court cannot find that "plain intent" in the language of the confidentiality clause. ████████████████████████████ ██████ ██ ██████ ██████ ████████ █████ █████ ████ ██ ██████ ██ ██████ █ ██████ █ ██████ ████████ ██ ██████ ██████ █ ██████ █ ██████ ████████ ██ ██████ Paice attempts to bring itself within ██████ – unsuccessfully in the Court's view.

Paice interprets the provision ████████ ██ ████████ ██ ██████ ██████ ██████ ██ ████████ █ ██████ ██ ██████ ██ ██████ ██████████████████████████████████ ██████████████████████████████████ ██████

────────────────────
[3]



However, Defendants have now unequivocally withdrawn their request for the Settlement Agreement and its terms. (ECF No. 177, Exh. B).   Paice complains about Defendants' change of position on their entitlement to the Settlement Agreement and its terms, suggesting "collu[sion]" or some "kind of deal" between Toyota and the Defendants. (ECF No. 186, 12).   While Paice thus intimates a sinister motive to Toyota in its change of position, Paice expressly declined in the hearing to assert a violation by Toyota of ██ ██ █████████ █████████ ██ ██ ████████████ ████ ██████ ██████ ████████ ████ █████ ███ ██ ██████ ██ ████ █████ ██ ██████ ██ ██ ████ █████ ██ ██████ █████ █████████████ █████ ██ ████████ ██████

Further, the Defendants are no longer pursuing financial documents from Paice and Abell which arguably would have revealed the settlement amount and related terms in the Agreement.  (ECF No. 244, 3). ████████████████ ██ ██ ██ █████ █████ ██ ███ ████ █████ ██ ██ █████ ██ ██ ██ █████ ███████████████████████ ██ █ ██ ████ █ █ █ ████

███████████████████████████████████████████████████

██ ██    But Defendants did not, and Paice has not provided any authority estopping Defendants from a change of their discovery position.

Nonetheless, Paice seeks to disclose the Settlement Agreement arguing that it is required to do so to ███████████ ████ █████████ ███████████ specifically the mandates of Rule 26, the Local Rules and the Court's scheduling order (ECF No. 186, 9-10).  In its briefing, Paice declares that:

> Rule 26(a)(1) requires a party to provide initial disclosures without awaiting a discovery request, including documents that may be used to support its claims or defenses, as well as documents on which damages computation is based. See Fed. R. Civ. P. 26(a)(1)(A)(ii) & (iii). Rule 26(a)(2) requires a party to provide expert disclosures, including all opinions and the basis and reasons for them, as well as the facts or data considered by the witness. See Fed. R. Civ. P. 26(a)(2)(B)(i) & (ii). Finally, Rule 26(a)(3) requires a party to provide information regarding the evidence that it may present at trial. See Fed. R. Civ. P. 26(a)(3)(iii). Similarly, the Local Rules of this District set forth pretrial procedures where a party is required to provide details of the damages claimed and a listing of the exhibits it expects to offer at trial. See Md. Local Rule 106. Finally, the Court's scheduling order mandates the disclosures under Fed. R. Civ. P. 26(a) and Local Rules and sets forth the timing of these disclosures.

(ECF No. 186, 10) (emphasis in original).

This is patent bootstrapping.  Paice is, as Toyota states, "trying to manufacture its own legal obligation to produce the

Agreement . . ." (ECF No. 209, 3).  Paice's <u>obligation</u> to produce and disclose the Settlement Agreement is entirely dependent on its <u>right</u> to disclose and use the Settlement Agreement.

The Court agrees with Toyota that ███ ███ ████ █ ███ █ ███ ████ █ █ ████ ███████████████████████ ███ █ ████ ███ █ ████ █ ████ █ ████ █ ███ █ █ ████ ███ █ ████ █ ████ ███████ ███ █ ██ ████ █ ███ █ ███ █ ████ ████████████████████████████████████ (ECF No. 209, 2).



Thus, a "reasonable reading of the plain language" demonstrates the parties' intent ██ ██████ ███████ ███████████████████  The parties could, of course, have provided for ████████████████████ ███████████████████████████ ████████████████████████████ ███ █ █████████ (ECF No. 186, 13) (emphasis added). They did not.  Thus, Paice's argument is also inconsistent with the venerable contract construction principle – "Inclusio unius est exclusio alterius" (The inclusion of one [exception] is the exclusion of another [exception]." <u>Black's Law Dictionary</u> (6th ed. 1990) – which principle of statutory construction Delaware

courts have cited with approval. <u>Walt v. State</u>, 727 A.2d 836, 840 (Del. 1999).

Finally, Paice points to other provisions of the Settlement Agreement, which in its view "confirm that the overall spirit of the confidentiality clause is balanced and flexible, not the overly restrictive prohibition asserted by Toyota." (ECF No. 186, 12).

The Court could find no useful case law on the meaning of the terms in 5.9, either in Delaware or indeed elsewhere. Paice trumpets <u>Marine Midland Realty Credit Corp. v. LLMD of Mich.,</u>

Inc., 821 F. Supp. 370 (E.D. Pa. 1993) as strong authority for its view of the meaning of the confidentiality provision in its agreement with Toyota.  (ECF No. 235, 1).  The Court disagrees.

The language of the confidentiality provision in Marine Midland is ██████████████████████████  "[The parties . . . agree not to disclose any of the financial terms of conditions of this Settlement Agreement . . . except as required by law or by judicial or administrative process or regulation." Id at 371.[4] However, the circumstances under which LLMD sought to be relieved of its confidentiality promise were entirely different than here.  The agreement at issue involved the settlement of a diversity action which LLMD filed in federal court against Marine Midland for breach of a loan agreement to purchase certain property.  In the trial, LLMD's expert testified on direct examination as to LLMD's lost profits of $6 million dollars.  On cross examination, mathematical errors were established in his lost profits computations; after which the expert was unable to give an opinion as to the amount of LLMD's loss, resulting in the striking of his testimony.  Before the conclusion of the trial, LLMD settled the case with Marine Midland and shortly thereafter sued its expert in state court, seeking reimbursement for the expert's corrected calculation of

---

[4] While similar, the Marine Midland language is arguably broader – with disclosure allowed pursuant to undefined "judicial process."  Where here the language relied on – ██████████████████ is more specific and restrictive.

$2.7 million in lost profits, minus the amount which LLMD actually accepted in settlement of the federal case against Marine Midland.

In construing whether the confidentiality provision allowed LLMD to disclose the settlement amount, the Court applied Pennsylvania law as established by the agreement. The Court interpreted the phrase "required by the law" more broadly than urged by Marine Midland, that is, limited to situations where failure to comply will result in a fine or other punitive order. Id. at 373. The Court stated that "if LLMD is to take advantage of its right to seek redress in a court of law for its claimed injury, it is required by law or judicial process to bring a lawsuit and to divulge the settlement amount. Failure to file the lawsuit will mean that LLMD will have to forego that important right." Id.   The Court declared that the "settlement amount in 1989 action is indeed relevant, if not central to LLMD's action in the Court of Common Pleas." Id. at 372 (emphasis added)  The Court continued that "[t]he agreement in this case, according to its plain meaning, does not prevent a party from bringing a bona fide lawsuit in which the settlement figure must necessarily be disclosed in order to obtain legal redress." Id. at 373.

Here, of course, there is no such necessity. The confidentiality provision of the agreement between Paice and

Toyota interpreted under general contract principles does
deprive Paice of the potential use of the Settlement Agreement
in its case; however, the admissibility of the settlement
(considering relevance and prejudice), as discussed below, is
questionable under federal circuit precedent.   And, obviously
Paice can prove its damages, as other patent holders must do,
without any evidence of a prior settlement or other licenses.
Evidence of other licenses is just one of the many Georgia-
Pacific factors.   Chisum has noted that "[u]se of the Georgia-
Pacific factors has been approved by numerous Federal Circuit
decisions and by district courts.   However, decisions also
caution that the factors are not the exclusive means of
assessing a reasonable royalty and that some or all the factors
may not be pertinent in a given case.   The fifteen factors are
"comprehensive" but "un-prioritized and often overlapping."   7
Donald S. Chisum, Chisum on Patents § 20.07[2][a] (Matthew
Bender) (citing ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860,
869 (Fed. Cir. 2010).

    Also, Paice argues that "[i]t is well established that a
Settlement Agreement is discoverable despite a confidentiality
designation especially when there is a protective order in place
to prevent unauthorized disclosure," citing three cases. (ECF
No. 186, 14).   While the undersigned does not dispute this
general principle, this dispute is not about the "discovery" of

15

the Settlement Agreement.  Paice has it. Nor is it seriously contended that "discovery" of this Settlement Agreement will lead to admissible evidence.  The dispute is whether Paice has the right to use the Settlement Agreement.  Under the terms of the Settlement Agreement, the Court has determined it does not.

First, all three of the cases Paice cites for this "well established" proposition examine the entitlement of a party to discovery.  While Paice attempts to characterize this as a discovery dispute relying on the liberal nature of discovery, it plainly is not, as Paice already has the Settlement Agreement and has essentially conceded that it seeks use of the Settlement Agreement in and of itself.  Moreover, Paice has not argued that the Settlement Agreement is "reasonably calculated to lead to discovery of admissible evidence."

Second, all three cases are inapposite for other reasons. Oakridge Associates v. Auto-Owners, 2010 WL 3788058 (W.D. N.C. September 23, 2010) involved a claim of bad faith breach of an insurance contract, alleging that defendant improperly refused to indemnify and defend plaintiff against a lawsuit by Ms. Gibson.  The defendant sought the confidential agreement, settling the case between Oakridge and Ms. Gibson.  Oakridge did not object to production of its confidential Settlement Agreement under the confidentiality provision of agreement or on the basis of lack of relevance, but declined to produce it as

Ms. Gibson had not waived her right to confidentiality, despite Oakridge's attempts to secure her waiver.  Thus, this case does not shed any light on the propriety of disclosure of the confidentiality provision at issue here.  Moreover, the Court ordered production of the Settlement Agreement as "central to both whether there is insurance coverage and how much, since plaintiff's suit seeks to recover amounts paid by plaintiff in settling the underlying suit." Id. at *2. (emphasis added). Again, the Settlement Agreement here is not "central to" the determination of damages.

Similarly, the Court in Thermal Design, Inc., v. Guardian Building Products Inc., 270 Fed. R. Civ. P. 437, 438-39 (E.D. Wis. 2010) noted that Thermal's arguments went to "the admissibility of settlement material rather than limits on their discoverability." Id. at 439.  Also, the Court found that Thermal Design had essentially conceded that the "Settlement Agreement contains information that is relevant to th[e] lawsuit." Id.  at 438.  Toyota obviously does not concede relevance, but argues vigorously that it is inadmissible.

Board of Trustees of the Leland Stanford Junior University v. Tyco, Int'l Ltd, 253 Fed. R. Civ. P.  521 (C.D. Cal. 2008) also was decided under the liberal rubric of discovery – not the more restrictive rules on admissibility applicable to settlement materials.  Further, the Court found that "[s]ince" plaintiffs

have relied upon and cited past Settlement Agreement to support their patent infringement claims, the sought after Settlement Agreement of plaintiff with another alleged patent infringer was found to be "clearly relevant." Id. at 522

Finally, Paice argues that the existing protective order is sufficient to address Toyota's concerns and safeguard its rights to confidentiality.  This is an attractive idea.  "No harm, no foul."  The Court, Paice argued in the hearing, is adept at working with, and protecting confidential information from publication.  Reports can be sealed in pre-trial and trial situations.  Jurors can be instructed.  But that is not what Toyota bargained for, indeed what it paid for.  Moreover, no system is failsafe.  Critically, protective orders issued in this case to restrict the dissemination of the confidential settlement amount and other terms of the Paice-Toyota Agreement are not impenetrable.  Courts can, and do, modify protective orders of other courts, releasing theretofore confidential information.  See Tucker v. Ohtsu Tire and Rubber Co., Ltd., 191 F.R.D. 495 (D. Md. 2000); James W. Moore, et al, Moore's Federal Practice Civil § 11.432.  This practice has lead one commentator to complain that the "unreliability [of protective orders] . . . shield[ing] sensitive commercial information. . ." Alan Lawrence, Comment: The Value of Copyright Law as a Deterrent to Discovery Abuse, 138 U. Pa. L. Rev. 549, 582 (1989).

**(2)  Discoverability of the Settlement Agreement**

Next, the Court addresses Toyota's alternative argument that the Paice-Toyota Settlement Agreement is inadmissible as evidence to establish "reasonable royalty" damages, and therefore, should likewise be held "undiscoverable" because the Agreement itself is not reasonably calculated to lead to discovery of admissible evidence.[5]  (ECF No. 177, 4).  Plaintiffs respond that Toyota has confused the standards for admissibility and discoverability.  (ECF No. 186, 15).  While the Court has determined that Paice has bargained away its rights to use its Settlement Agreement with Toyota to advance its patent infringement claims against Hyundai, the Court also concludes that under the liberal discovery rubric of the federal rules, the Settlement Agreement is discoverable, though under controlling Federal Circuit precedent its admissibility is highly questionable.

As to discovery matters in patent litigation, the law of the Federal Circuit "applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law." In re MSTG, Inc., 675 F.3d 1377, 1341 (Fed. Cir. 2012)(quoting

---

[5] Notwithstanding the Court's reasoning that Paice bargained away its right to produce the Paice-Toyota Settlement Agreement in connection with this litigation, in light of Plaintiffs' motion to compel (ECF No. 251), particularly the motion of Abell, the Court shall consider this issue.

Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc., 265 F.3d 1294, 1307 (Fed. Cir. 2001)).   The Federal Circuit has deemed that certain issues, such as the scope of the attorney-client privilege and work product doctrine, relate to issues of substantive patent law; and has likewise held that Federal Circuit law applies in "determining whether a privilege or other discovery limitations protect disclosure of information related to reasonable royalties because that issue 'implicates the jurisprudential responsibilities of [the Federal Circuit] within its exclusive jurisdiction,' Advanced Cardiovascular Sys, Inc., 265 F.3d at 1303, and has a significant bearing on the substantive issue of patent damages, see In re EchoStar Commc'ns Corp., 448 F.3d 1294, 1298 (Fed. Cir. 2006)." In re MSTG, Inc., 675 F.3d at 1341.   Here, Plaintiffs seek to introduce the Paice-Toyota Settlement Agreement as evidence probative of their "reasonable royalty" damages case against Defendants. Accordingly, this issue implicates the jurisprudential responsibilities of the Federal Circuit.   Thus, Federal Circuit law applies.

As explained supra, "upon a showing if infringement, a patentee is entitled to 'damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.'" ResQNet, 594 F.3d 868 (quoting 35 U.S.C. § 284).   Reasonable royalty damages

are derived from a hypothetical negotiation between the patentee and infringer at the time when the infringement began.  Id. at 869-70 (citations omitted).  This analysis is guided by the Georgia-Pacific factors, which, inter alia, require consideration of past and present royalties received from licenses of patents-in-suit proving or tending to prove an established royalty.  Id. (citing Georgia-Pacific, 318 F. Supp. at 1120).  However, the Federal Circuit has cautioned that "[t]he propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable." LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 77 (Fed. Cir. 2012)("The notion that license fees that are tainted by the coercive environment of patent litigation are unsuitable to prove a reasonable royalty is a logical extension of Georgia-Pacific, the premise of which assumes a voluntary agreement will be reached between a willing licensor and a willing licensee, with validity and infringement of the patent not being disputed.")(citing Georgia-Pacific, 318 F. Supp. at 1120).

In ResQNet, the Federal Circuit acknowledged its longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages.  694 F.3d at 872.  Yet, on remand, the court in ResQNet ordered the district court to consider a settlement license because that license was the most reliable on record and the only identified license setting a

running-royalty for the patent-in-suit. Id. at 872-73. However, the court cautioned that the district court must consider the license in its proper context within the hypothetical negotiation framework to ensure that a reasonable royalty derived therefrom reflects the true economic demand for the claimed technology. Id. at 872. Conversely, in LaserDynamics, the Federal Circuit found the district court committed reversible error by allowing a particular settlement agreement (the BenQ settlement) into evidence. 694 F.3d at 78. In rendering its decision, the Federal Circuit observed that the BenQ settlement was executed shortly before trial (a trial in which BenQ would have been at a severe procedural and legal disadvantage due to numerous harsh sanctions imposed on BenQ for its repeated discovery misconduct and misrepresentation) and constituted a lump sum license fee six times greater than the next highest amount paid for a license to the patent-in-suit. Id. As such, the court determined that the BenQ settlement fell "outside the limited scope of circumstances under which we deemed the Settlement Agreement in ResQNet admissible and probative. The probative value of the BenQ settlement is dubious in that it has very little relation to demonstrated economic demand for the patented technology, and its probative value is greatly outweighed by the risk of unfair prejudice,

confusion of the issues, and misleading the jury." Id. (citing Fed. R. Evid. 403).

Here, Toyota asserts that the circumstances of the Paice-Toyota Settlement Agreement parallel those rendering the BenQ settlement inadmissible in LaserDynamics. (ECF No. 177, 5). Plaintiffs, on the other hand, assert that the Agreement mirrors the settlement at issue in ResQnet, as the single most reliable license on record and the only identified license setting a running-royalty for the patent-in-suit. (ECF No. 186, 21). Having reviewed the governing Federal Circuit precedent and the circumstances surrounding the Paice-Toyota Settlement Agreement, the Court concludes that this issue is appropriately left for the trial judge. Without disclosing the confidential terms of the Agreement, itself, the undersigned cautions that the prejudicial concerns expressed by the Federal Circuit in LaserDynamics appear to readily apply to the Paice-Toyota Settlement Agreement. Yet, the issue before the undersigned is discoverability, not admissibility, and considering that the parties have yet to commence expert discovery or exchange expert reports, this question may be better left for the trial judge to consider when the record (including the expert reports) is fully developed.

**B. Motion to Compel**

As previously stated, in response to the Court's tentative ruling on Toyota's motion for protective order, on May 14, 2014, Plaintiffs (Paice and Abell) each served Toyota with subpoenas for the Paice-Hyundai Settlement Agreement.  Toyota objected. Thereafter, Plaintiffs filed their motion to compel, arguing their entitlement under liberal discovery principles, the relevance of settlement agreements to damages and reasonable royalty analysis under Federal Circuit authority, and the adequacy of the existing protective order (ECF No. 64) in assuring the continued confidentiality of the Settlement Agreement. (ECF No. 251).  Toyota responded that the terms of the Settlement Agreement – not principles of discovery – continue to control – and defeat Paice and Abell's right to "discover" and use the Settlement Agreement. (ECF No. 282). Since the Court has already rejected Paice's right to use the Settlement Agreement under the terms of the Agreement, the Court will address Abell's right.[6]

First, Toyota contends that Abell stands in the same position as Paice under the terms of the Settlement Agreement, because Abell (a non-signatory to the Agreement) qualifies as a

---

[6] Much of the parties' briefing on the motion to compel is devoted to rearguing their respective positions concerning the proper interpretation of Section 5.9 (Confidentiality) of the Agreement (ECF No. 251, 12-15; ECF No. 282, 6-10).  However, this issue has been adequately addressed by the Court, see supra Part I.A., and does not warrant further attention in the context of this motion.



(<u>Id.</u> at 4-5).  Plaintiffs dispute that Abell "stands in the shoes of Paice," as ███████ ██████████ ██████ ██ ████████████████████████████ (ECF No. 304, 8-11).

As already explained, Section 5.10 of the Agreement designates ⸺ and the parties agree ⸺ that the laws of Delaware govern any dispute arising out of or relating to the Agreement.  As such, the Court looks to the Delaware law to determine whether Abell constitutes a ██████████████████████████████████████ ████████████████, especially in the absence of definitions in the Agreement.

Under Delaware Law, to qualify as a third party beneficiary of a contract: (1) the contracting parties must have intended that the third party beneficiary benefit from the contract, (2) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (3) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract.  <u>E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates,</u>

S.A.S., 269 F.3d 187, 196 (3rd Cir. 2001) (citing Guardian
Constr. Co. v. Tetra Tech. Richardson, Inc., 583 A.2d 1378, 1386
(Del. 1990)("In order for third-party beneficiary rights to be
created, not only is it necessary that performance of the
contract confer a benefit upon a third person that was intended,
but the conferring of the beneficial effect on such third-party,
whether it be creditor or done, should be a material part of the
contract's purpose.")); see also Saudi Am. Bank v. Shaw Group,
Inc. (In re Stone & Webster, Inc.), 558 F.3d 234, 241 (3d Cir.
Del. 2009).

Here, Abell does not qualify as a third party beneficiary
of the Paice-Toyota Settlement Agreement. Toyota provides
little to no support for its contention that Abell is a third
party beneficiary, ███████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████   ████   █   ████   █████   ████████   ████████   ██   ████

████████

Abell similarly does not qualify as an assign ████   ████

████████████████   Under Delaware law, an assign is "[o]ne

to whom property rights or powers are transferred by another."

Natural   Energy   Dev.,   Inc.   v.   Shakespeare-One   Limited

Partnership, C.A No. 4836-CS, 2013 WL 3809250, at *3 (Del. Ch.

July 22, 2013) (citing the definition of assign in Black's Law

Dictionary (9th ed. 2009)).   Further, "where an acquiror

purchases the stock of a corporation, that purchase does not, in

and of itself, constitute an 'assignment' to the acquiror of any

contractual rights or obligations of the corporation whose stock

is sold." Baxter Pharmaceutical Products, Inc. v. ESI Lederle

Inc., No. CIV. A. 16863, 1999 WL 160148, at *5 (Del.Ch., 1999).

While it is undisputed that Abell is an investor in Paice (even

a substantial investor), that, in and of itself, does not render

Abell an assign of any of Paice's contractual rights or

obligations.   Additionally, the Court further acknowledges that,

on February 13, 2012, Paice assigned "an undivided fractional

interest in the patents-in-suit" to Abell, yet, ██   ████

█████████████████████████████████████████████████████████████████

████   ███   ███   █████   ██████   ████   ██   ████████   ████

████████████████████████████████████   That Abell

has since acquired part-patent ownership rights to the patents-

in-suit here, does not (as a matter of contract) render Abell an assign of the Paice-Toyota Settlement Agreement.

Further, Abell is also not a representative ████ ████ ████████ ████████ ████████ ████ █ ████████ ████ ████ ████ ████ ████ ████████ ████ ████ ████ ████ ████ ████ ████ ████████ ████ ████ ████ ████ ████ ████ ████ ████ ████ ████████ ████ The term "representative" is defined as "one who stands for or acts on behalf of another." Black's Law Dictionary (9th ed. 2009). Here, in contrast, Abell as co-owner of the patents-in-suit, is asserting its patent rights against Defendants, not standing in or acting on behalf of Paice.

Lastly, Toyota contends that Abell is bound by the same contractual provisions as Paice, including Section 5.9 (Confidentiality) of the Settlement Agreement, because it is "fundamental that successors-in-interest to all or part of a patent take subject to the substantive provisions of prior license agreements and encumbrances." (ECF No. 321, 2). Plaintiffs, on the other hand, contend that the confidentiality provision of the Agreement (Section 5.9) is not a substantive license provision, and therefore, that provision is not binding on subsequent owners of the patent(s), such as Abell. (ECF No. 328, 3).

Generally, the interpretation of contracts for rights under patents or patent ownership is determined by state, not federal

law.  Sky Tech., LLC v. SAP, AG, 576 F.3d 1374, 1379 (Fed. Cir. 2009)(quoting Akazawa v. Link New Tech. Int'l, Inc., 520 F.3d 1354, 1357 (Fed. Cir. 2008)("the question of who owns the patent rights and on what terms typically is a question exclusively for state courts")(internal citation omitted).  In contrast, however, Federal Circuit law applies to "both substantive and procedural issues 'intimately involved in the substance of enforcement of the patent right.'"  Amana Refrig., Inc. v. Quadlux, Inc., 172 F.3d 852, 856 (Fed. Cir. 1999)(quoting Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424, 428 (Fed. Cir. 1996)).  As such, the effect of patent assignment, as opposed to interpretation of assignment contract terms themselves, is an issue of substantive patent law and is governed by federal law.  Sky Tech., 576 F.3d at 1379; see also Innovus Prime, LLC v. Panasonic Corp., No. RMW-12-0660, 2013 WL 3354930, at *3 (N.D. Cal. July 2, 2013).  On this point, federal courts, including the Federal Circuit, have held that a patent owner cannot transfer an interest greater than that which it possesses, and assignees take patent rights subject to legal encumbrances thereon.  See Datatreasury Corp. v. Wells Fargo & Co., 522 F.3d 1368, 1372 (Fed. Cir. 2008)(citing e.g., Worley v. Tobacco Co., 104 U.S. 340 (1881)(holding that where an inventor's public use invalidated his patent, his assignee did not have title to a valid patent); also, e.g., Sanofi S.A. v.

Mde-Tech Veterinarian Prods., 565 F. Supp. 931 (D.N.J. 1983)(holding that a patentee who had licensed the exclusive right to distribute the patented product in the United States could not thereafter assign that right, because a patentee cannot transfer a right greater than it possesses).  However, the Federal Circuit, in Datatreasury, made clear that legal encumbrances deemed to "run with the patent" do not include "procedural terms of a licensing agreement unrelated to the actual use of the patent (e.g. an arbitration clause)."  Id. Accordingly, licensing terms not tied to the right to use a patented invention do not encumber patent asignees (or "successors-in-interest).

Here, as with the arbitration clause at issue in Datatreasury, the confidentiality provision of the Paice-Toyota Settlement Agreement is clearly a procedural term unrelated to the right to use Paice's (and now Abell's) patents.  Toyota contends that "use" contemplates use of the license agreement in a patent infringement trial. (ECF No. 321, 3).  However, "use," within the meaning of Datatreasury, clearly refers practicing the patented invention, not reference to an existing license agreement for purposes of establishing reasonable royalty damages in an infringement trial.  Cf. Innovus, 2013 WL 3354930, at *3 (awarding the defendant summary judgment, finding that the plaintiff did not possess the right to sue the defendant for

<u>infringement</u>, because the defendant was a licensee of the original patent owner, whom could not convey the right to exclude defendant from <u>practicing the invention</u>). As already explained, Abell is not a beneficiary or assign of the Paice-Toyota Settlement Agreement; and as discussed herein, there is no basis in substantive patent law to exclude Abell from compelling discovery of that agreement.

## III.  Conclusion

For the foregoing reasons, Toyota's Motion for a Protective Order (ECF No. 177) is GRANTED and the Plaintiff's Motion to Compel (ECF No. 251) is GRANTED, as to Abell and DENIED as to Paice.


Date: <u>7/7/14</u>                  _____/s/_____
                                    Susan K. Gauvey
                                    United States Magistrate Judge