```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND

PAICE, LLC, et al.,            *

     Plaintiffs                 *

     v.                         *     CIVIL NO.  WDQ-12-0499

HYUNDAI MOTOR COMPANY, et al.,  *

     Defendants.                *

*    *    *    *    *    *    *    *    *    *    *    *
```

## Memorandum Opinion

Presently pending before the Court is Defendants' motion to strike (ECF No. 190). Briefing is complete. A hearing on this motion, Plaintiffs' motion for sanctions (ECF No. 181) and Defendants' motion to compel (ECF No. 184), was held on May 20, 2014. For the reasons discussed herein, the motion is GRANTED.

**I. Background**

On March 25, 2014, Defendants produced 5,500 pages of documents, largely technical documents, to Plaintiffs. Among those produced was a small number of technical and marketing documents designated "PRIVILEGED COMMUNICATIONS / CONFIDENTIAL / ATTORNEY WORK PRODUCT." (ECF No. 202, Exs. 1-9). Several of these purportedly confidential documents also bear Quinn Emanuel watermarks dated 04/30/2012, 05/24/2012, and 11/26/2012. (ECF No. 202, Exs. 3, 4, 5 and 9). Plaintiffs referenced two of the

aforementioned documents, in particular two bearing Quinn Emanuel watermarks dated 5/24/2012 and 11/26/2012, in the body of their motion for sanctions (ECF No. 181, 3-4) and attached the same as exhibits (id., Exs. 1, 2).  In fact, Plaintiffs' motion for sanctions, which seeks severe sanctions including preclusion of evidence, relies heavily on these documents as evidence of Defendants' "bad faith" efforts to withhold highly relevant and probative discovery — in particular, "high-level" technical discovery.  Defendants have since "clawed-back" all nine subject documents, pursuant to the confidentiality order entered in this case (ECF No. 64), and filed the present motion to strike, asserting that each of the documents are attorney-client privileged and/or work-product privileged, and thus, the Court should strike any part of Plaintiffs' motion for sanctions which relies on these inadvertently produced documents.  (ECF No. 190, 6).

**II. Discussion**

Defendants' motion to strike contends that all nine subject documents are covered by the attorney-client privilege, or, alternatively, the attorney work-product doctrine.  (ECF No. 190, 3-4).  Defendants accordingly claim that each of the purportedly privileged documents was generated by Dr. Yong-Seok Kim and/or his colleagues at the Research and Development Center in response to questions from defense counsel regarding the

highly technical accused technology, which were posed for the purpose of defending in this litigation. (ECF No. 213, 3, 9). Plaintiffs dispute that any of the subject documents were created pursuant to attorney-client communications or in anticipation of litigation, pointing to metadata for two of the documents at issue which indicate that both were "created" on 12/04/2007, four years prior to the present litigation. (ECF No. 202, 8).

"Like all privileges, the attorney-client privilege 'interferes with the truth seeking mission of the legal process,' and therefore is not 'favored.'" In re Allen, 106 F.3d 582, 600 (4th Cir. 1997)(quoting United States v. Aramony, 88 F.3d 1369, 1389 (4th Cir. 1996)).  The attorney-client privilege, however, enjoys a "special position as 'the oldest of the privileges for confidential communications known to the common law' and that the privilege serves a salutary and important purpose: to 'encourage full and frank communication between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice.'" Id. (quoting Upjohn Co v. United States, 449 U.S. 383, 389 (1981)).  Accordingly, if a party demonstrates such privilege applies, the privilege affords the communications at issue absolute and complete protection from disclosure. See In re Grand Jury Proceedings, 102 F.3d 748, 750 (4th Cir. 1996).

3

Yet, the party asserting the privilege bears the burden of demonstrating:

> (1) The asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

In re Allen, 106 F.3d at 600(citing United States v. Tedder, 801 F.2d 1437, 1442 (4th Cir. 1986)). It is incumbent upon the proponent of the privilege to specifically and factually support the claim of privilege, usually through affidavit or other ex parte submissions, and an improperly or unsupported claim of privilege is the equivalent of no privilege at all. Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B, 230 F.R.D. 398, 409-10 (D. Md. 2005).

Rule 26(b) of the Federal Rules of Civil Procedure sets forth the framework for the work-product privilege doctrine. In pertinent part, Rule 26(b) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" unless "the party shows that it has

substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). To qualify as work product, therefore, a document or tangible thing must have been prepared in anticipation of litigation. On this point, the Fourth Circuit has adopted the "because of" standard. See National Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992)(finding that work product materials "must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation")(emphasis in original). This standard asks "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2024, at 502 (3d ed. 2010). Materials prepared in the ordinary course of business, pursuant to regulatory requirements, or for other non-litigation purposes are not prepared in anticipation of litigation within the meaning of Rule 26(b)(3). National Union, 967 F.2d at 984. Moreover, the proponent of the privilege carries the burden of demonstrating that the documents at issue were created "because of" the

present litigation. See Solis v. Food Employers Labor Relations Ass'n, 644 F.3d 221, 232 (4th Cir. 2011). In satisfying this burden, a party cannot rely on conclusory statements in its memoranda; rather, as in the case of the attorney-client privilege, the proponent must provide specific factual support for its assertions. See Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B, 230 F.R.D. 398, 418 (D. Md. 2005).

On May 20, 2014, the Court held a hearing on this and other pending discovery motions. During that hearing, and as memorialized in the Court's May 21, Order (ECF No. 233), the Court ordered Defendants to produce, in camera, additional information as to the circumstances that precipitated the creation of the subject documents. Defendants submitted under seal in camera declarations of Sean Pak, Esq. and Dr. Yong-Seok Kim, with accompanying exhibits (ECF No. 270). Thereafter, the Court sought additional information on June 3, 2014, seeking clarification of certain statements in the declarations, additional metadata, and the location of electronic files. (ECF No. 267). Defendants responded with an affidavit of Phillip Charles Sternhell with exhibits, again under seal in camera (ECF No. 292).

Upon consideration of the ordered in camera submissions, the Court finds that Defendants have satisfied their burden of

6

demonstrating that the subject documents were generated "because of" the present litigation. Therefore, they warrant work-product protection. There is no indication that these documents were created in "the ordinary course of business." On this point, Defendants have demonstrated that in two written communications in March and September, 2012, outside defense counsel posed a variety of technical questions to Hyundai and Kai and Defendants have provided to the Court substantiating email correspondence and contemporaneous document attachments.

No documentation confirms when Defendants sent each and every one of the subject documents to defense counsel.[1] No documentation confirms as to which specific technical question each document relates. However, the Court is satisfied, based on Dr. Kim's affidavit,[2] the subject matter of the nine disputed documents which do relate to the inquiries from defense counsel, the location of the documents within Dr. Kim's litigation files,

---

[1] Four of the nine disputed documents have Quinn Emanuel watermarks with specific dates of 4/30/12, 5/24/12 and 11/26/12, demonstrating defense counsel's receipt presumably directly from the Defendants' employees or through in house counsel. As to the remaining documents, there is no documentation as to whether they were sent to defense counsel in the litigation give and take after the March and September, 2012 inquiries of defense counsel or were identified in Defendants' files in response to Plaintiffs' May, 2013 document request. Ultimately, it does not matter, as there are affidavit statements that they were created for use in the development of defenses and strategies, and there is nothing in the record to suggest that they were created in the ordinary course of business.

[2] Dr. Kim attests in his affidavit that the nine disputed documents were generated to answer the specific questions posed by defense counsel.

and their timing, that the documents were created "because of" this litigation.

Moreover, while metadata for several of the subject documents (six in total) demonstrates document "creation dates" significantly pre-dating the present matter, Defendants have fairly accounted for this apparent inconsistency of dating. Specifically, Defendants have attached for the Court's review the template used to generate four of the subject documents and attested via declaration that, while the template for the remaining two documents could not be located, it appears that both were created for the purpose of this litigation using a preexisting document as a template. All the documents bear a "last mod date" during the pendency of the litigation and are clustered in periods after the late March and early September, 2012 outside defense counsel communications.[3] Accordingly, the Court concludes that Defendants have supplied the Court with sufficient factual support to sustain their claim of work-product privilege. The remaining question, therefore, is whether the subject documents constitute "opinion" or "fact" work-product.

Work product may be characterized as either fact or opinion work product. Fact work product consists of documents not

---

[3] Under separate cover, the Court is providing this metadata for all nine disputed documents to Plaintiffs' counsel.

containing the attorney's (or the party's) mental impressions and may be obtained upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship. In re Grand Jury Proceedings #5, 401 F.3d 247, 250 (4th Cir. 2004). Opinion work product, conversely, contains "the fruit of an attorney's mental processes," or, in other words, the "mental impressions, conclusions, and opinions or legal theories of an attorney or other representative of a party concerning litigation." Id.; Sher v. Barclays Capital Inc., ELH-11-1982, 2013 WL 3279801, at *4 (D. Md. June 26, 2013)(citation omitted). Opinion work product is "absolutely immune from discovery whether it is actually prepared by the attorney or another representative of the party." In re Allen, 106 F.3d at 607 (citation omitted).

In their motion to strike, Defendants contend that the subject documents constitute opinion work-product, because the documents reflect a Defendant employee's analysis of issues germane to this lawsuit and implicate legal advice and strategy developed by defense counsel. (ECF No. 213, 10). Plaintiffs, on the other hand, dispute that the subject documents constitute work-product material, but, alternatively, contend that the documents clearly disclose technical and marketing information,

and thus, could only conceivably qualify as fact work-product. (ECF No. 202, 11-12).

The qualified immunity covering documents or other tangible things falling within the classification of fact work-product "is little more than an 'anti-freeloader' rule designed to prohibit one adverse party from riding to court on the enterprise of the other." National Union, 967 F.2d at 985.  In contrast, opinion work product is carefully guarded from disclosure to an opposing party as revealing an attorney's thoughts and opinions to an opposing party contradicts the principles underlying the adversary process.  Allen, 106 F.3d at 607 (citing Hickman v. Taylor, 329 U.S. 495, 511 (1947)).  The Fourth Circuit has held that the work of selecting and compiling certain records constitutes opinion work product.  Id. at 608.  In Allen, the court found that a compilation and arrangement of selected employment records, which were not themselves protected from disclosure, constituted opinion work product because counsel's selection and compilation of these particular documents revealed her thought processes and theories regarding the litigation.  Id. at 608 (citing e.g., Shelton v. American Motors Corp., 805 F.2d 1323, 1329 (8th Cir. 1986)("In cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research ... We believe [counsel's] selective review

10

of [her clients'] numerous documents was based on her professional judgment of the issues and defenses involved in this case.")). Magistrate Judge Sullivan reached the same conclusion in Sher, 2013 WL 3279801, at *4. In that case, the plaintiff retained outside counsel to assess whether it had any potential causes of action against the defendant. Id. at *2. Outside counsel asked the Plaintiff to compare the asset liquidation prices received by the defendant with comparable securities available on the day of the sale and to compile that data into a spreadsheet, an employee of the Plaintiff did so. Id. The defendant later sought discovery of that spreadsheet, which Judge Sullivan denied, finding that the spreadsheet constituted "a comprehensive opinion work product that evolved out of [the plaintiff's] specific choices and thought processes concerning litigation against [the defendant]." Id. at *4 (citing Allen, 106 F.3d at 607).

Here, the Court concludes that the subject documents constitute opinion work-product. First, Defendants' in camera submissions demonstrate that the documents in question respond, or at least relate, to questions posed by defense counsel for the purpose of defending this litigation. Moreover, the "technical" subject documents (ECF No. 202, Exs. 1-7) synthesize and summarize the highly complex operation of the accused vehicles into "high-level" narrative explanations. A "summary"

11

is defined as "covering the main points succinctly." Webster's New Collegiate Dictionary (1980). "Synthesis" is defined as "the composition or combination of parts or elements as to form a whole." Id.   Both of these processes involve judgment and discrimination.  In a summary the "main points" must be identified.  In a synthesis, there is obviously discretion in composing or combining of parts.  Said another way, these documents do not represent raw facts, but embody the mental "sorting," selection, and analysis of the Hyundai and Kia employees.

Similarly, just like the spreadsheet at issue in Sher, the "financial" subject documents (ECF No. 202, Exs. 8-9) compile lists of features and other information pertaining to the hybrid vehicles offered by Defendants' competitors.  This choice and arrangement of products and features likewise reveals Defendants thought processes and theories regarding this litigation, and accordingly warrants protection under Rule 26(b)(3)(A).

Even if the Court concluded that the subject documents constituted fact work product, and thus were discoverable upon a showing of substantial need and undue hardship, the Court would still grant Defendants' motion to strike.  When evaluating a party's claim of substantial need, courts consider: "(1) the importance of the materials to the party seeking them for case preparation; (2) the difficulty the part will have obtaining

them by other means; and (3) the likelihood that the party, even if he obtains the information by independent means, will not have the substantial equivalent of the documents he seeks." Sher, 2013 WL 3279801, at *4 (quoting E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc., 269 F.R.D. 600, 608-09 (E.D. Va. 2010). Plaintiffs have received all of the underlying data used to generate the subject documents, via Simulink and source code as well as financial disclosures, which would enable Plaintiffs to generate, for themselves, the substantial equivalent of these documents. In fact, Plaintiffs admitted as much in the May 20, hearing on the instant motion. (ECF No. 243, 84:10--58:1). Accordingly, whether fact or opinion work-product, Defendants' motion to strike is meritorious.[4]

In ruling on this motion, the Court is not criticizing Plaintiffs' counsel in bringing this matter to the Court's attention, especially in the light of the paucity of narrative explanations of the hybrid technology, at issue. Accordingly, the Court shall not award any expenses related to this motion.

---

[4] Because the Court finds that the subject documents qualify as opinion work product (or fact work-product unavailable due to the lack of substantial need and hardship), and therefore, warrant immunity from disclosure, the Court need not reach the question of whether the documents also constitute attorney-client privileged material. At first blush, they do not, however, appear to qualify as attorney-client privilege, and are properly analyzed under the work product doctrine.

13

## III. Conclusion

In accordance with the foregoing, the Court hereby strikes all reference to the clawed-back documents from the record in this case.  A separate order shall issue.



Date: June 27, 2014                         _____/s/_____
                                            Susan K. Gauvey
                                            United States Magistrate Judge