IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PAICE, LLC, et al., | * | |
| Plaintiffs | * | |
| v. | * | CIVIL NO. WDQ-12-0499 |
| HYUNDAI MOTOR COMPANY, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## Memorandum Order

Presently pending before the Court is Plaintiffs' motion to clarify the confidentiality order (ECF No. 219). I have also reviewed Defendants' opposition, Plaintiffs' reply, and Defendants' supplemental authority and clarifying letter. (ECF Nos. 261, 279, 284, 301). No hearing is necessary. Local Rule 105.6 (D. Md. 2014). For the reasons discussed herein Plaintiffs' motion is GRANTED in PART.

**I. Background**

The present lawsuit is a patent infringement case involving hybrid automotive technology. Plaintiffs have alleged infringement by Defendants of <u>five</u> U.S. patents.[1] On July 22, 2013, pursuant to Fed. R. Civ. P 26(c), Judge Quarles entered the stipulated confidentiality order governing the present litigation. (ECF No. 64). That stipulated order includes an agreed-to patent prosecution bar.

On February 19, 2014, Plaintiffs filed a separate suit against Ford Motor Company ("Ford") for patent infringement, alleging infringement by Ford of several of the same patents-

---

[1] Specifically, Plaintiffs allege infringement of U.S. Patent Nos. 6,209,672 (" '672 Patent"); 7,104,347 (" '347 Patent"); 7,237,634 (" '634 Patent"); 7,559,388 (" '388 Patent"); and 8,214,097 (" '097 Patent"). (ECF No. 94, ¶16).

1

in-suit here.  On April 4, 2014, Ford filed a petition with the United States Patent and Trademark Office ("PTO") for inter partes review ("IPR") of three of Plaintiffs' patents[2] ("Ford-IPR").  Both the '347 Patent and the '097 Patent are presently at issue in the instant litigation and the Ford-IPR.  Consequently, and in light of the aforementioned stipulated prosecution bar, Plaintiffs sought Defendants' consent to allow Plaintiffs' litigation counsel (and experts, consultants, etc.) to defend in the Ford-IPR.  Defendants objected to the participation of anyone having personally received any material designated "CONFIDENTIAL," OUTSIDE - ATTORNEYS' EYES ONLY," ["]OUTSIDE - ATTORNEYS' EYES ONLY - SOURCE CODE" in the Ford-IPR.  In response, on May 14, 2014, Plaintiffs filed the present motion seeking clarification from the Court that the agreed-to prosecution bar does not cover IPR proceedings.  (ECF No. 219).

**II. Discussion[3]**

In 2011, Congress enacted the Leahy-Smith America Invents Act ("AIA"), which, among other things, replaced **inter partes reexamination** with **inter partes review**.  Abbott Labs v. Cordis Corp., 710 F.3d 1318, 1326 (Fed. Cir. 2013) (citing 35 U.S.C. §§ 311-319 (2013)).  The purpose of this reform was to convert inter partes reexamination from an examinational to an adjudicative proceeding.  Id. (citing H.R. Rep. No. 112-98, pt. 1, at 46-47 (2011)).  IPR allows a petitioner to request to cancel, as unpatentable, one or more claims of a patent on the grounds authorized under 35 U.S.C. §§ 102 or 103, and only on the basis of prior art consisting of patents

---

[2] Specifically, Patent Nos. 7,104,347 (" '347 Patent"); 8,214,097 (" '097 Patent); and 7,455,134 (" '134 Patent").
[3] On July 14, 2014, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, this matter was reassigned to the undersigned for all discovery and related scheduling matters.  As will be elaborated further below, the Court is guided in deciding the present motion by the laws of the Federal Circuit and, in particular, In re Deutsche Bank Trust Co. Americas, 605 F.3d 1373 (Fed. Cir. 2010).  In Deutsche Bank, the Federal Circuit treated a petition for a writ of mandamus, which raised the question "whether a trial lawyer should be denied access to information under a protective order because of his additional role in patent prosecution, or alternatively be barred from representing clients in certain matters before the U.S. Patent and Trademark Office," as a discovery matter.  Id. at 1377.  As such, the undersigned decides the present motion in accordance with 28 U.S.C. § 626(b)(1)(A) and Local Rule 301.5.a. and need not make findings and recommendations for action pursuant to 28 U.S.C. § 626(b)(1)(B)  and Local Rule 301.5.b.

or printed publications. 35 U.S.C. § 311. These "adjudicative" IPR proceedings involve motions practice, limited discovery, depositions, and an oral hearing. 35 U.S.C. §§ 311(b), 316(a); 37 C.F.R. §§ 42.22, 42.51, 42.53, 42.70. Importantly, IPR also permits the patent owner to file one motion to amend the claims of the patent or patents at issue, so long as the request for amendment does not seek to enlarge the scope of the claims or to introduce new subject matter. 35 U.S.C. § 316(d); 37 C.F.R. § 42.121. Further, the parties to an IPR proceeding may jointly seek an additional motion to amend in the interest of materially advancing a settlement. 37 C.F.R. § 42.121.

In a patent case such as this, Federal Circuit law applies to discovery matters if the determination implicates an issue of substantive patent law. In re Deutsche Bank Trust Co. Americas, 605 F.3d 1373, 1377 (Fed. Cir. 2010) (citing e.g., Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc., 265 F.3d 1294, 1307-08 (Fed. Cir. 2001)). In Deutsche Bank, the Federal Circuit considered whether "a trial lawyer should be denied access to information under a protective order because of his additional role in patent prosecution, or alternatively be barred from representing clients in certain matters before the U.S. Patent and Trademark Office" and reasoned that because of the unique and important relationship to patent law, the determination of whether a protective order should include a patent prosecution bar is a matter governed by Federal Circuit law. Id. at 1377-78. Accordingly, the Court shall apply the law of the Federal Circuit in deciding the present motion.

Typically, courts are faced with a situation in which one party seeks to impose a patent prosecution bar, or the parties dispute the terms of the same. In these instances, a party seeking a protective order bears the burden of demonstrating "good cause" for its issuance — this is equally true for a party seeking to include in a protective order a provision effecting a patent

prosecution bar. Id. at 1378 (citing Fed. R. Civ. P. 26(c)). Under Deutsche Bank, "good cause" for imposition of a patent prosecution bar requires the proponent to show "that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." Id. at 1381. This evaluation requires district courts to balance these factors, including the risk of inadvertent disclosure or use of proprietary competitive information, against the opposing party's right to have the benefit of counsel of its choice. Id. at 1380 (citations omitted). "In balancing these conflicting interests the district court has broad discretion to decide what degree of protection is required." Id. (citing Seattle Times Co. v. Rhinehard, 467 U.S. 20, 36 (1984); Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992)). If the moving party meets these threshold requirements, the burden shifts to the party seeking an exemption from the patent prosecution bar to demonstrate, on a counsel-by-counsel basis:

> (1) That counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use.

Id. at 1381.

In this case, however, the issue before the Court is not whether "good cause" exists under Deutsche Bank to enter a protective order including a patent prosecution bar. The present dispute concerns "the scope of activities prohibited by the bar," and more precisely, whether the plain meaning of the negotiated prosecution bar prohibits Plaintiffs' litigation counsel (and

experts, consultants, etc.) from participating in an IPR proceeding before the PTO. In relevant part, the stipulated prosecution bar excludes the following actions and/or proceedings:

> Unless otherwise agreed to in writing by a Producing Party, any individual affiliated with the Receiving Party (including, but not limited to, experts, consultants, Outside Consultants, Counsel of Record, or in-house or outside counsel) who personally receives any material designated "CONFIDENTIAL," ["]OUTSIDE - ATTORNEYS' EYES ONLY," "OUTSIDE - ATTORNEYS' EYES ONLY - SOURCE CODE" by a Producing Party, and labeled as such by the Producing Party, **shall not participate in or be responsible for** the acquisition, preparation or prosecution of any patent, patent application, **reexamination petition**, or reissue application, or **for drafting or revising patent claims**

(ECF No. 64, ¶ 5) (emphasis added). Defendants contend that the aforementioned language covers IPR proceedings, specifically, as a "reexamination petition" or as "drafting or revising patent claims." (ECF No. 261, 9-13). Plaintiffs dispute Defendants' characterization, asserting that IPR is adjudicatory in nature and patent prosecution is a merely fractional element, not the primary focus. (ECF No. 219, 9-11).

First, the Court considers whether the plain meaning of the stipulated prosecution bar contemplates IPR as a form of "reexamination petition." Defendants assert that "reexamination petition," like the other listed proceedings (including patent, patent application, and reissue application), was drafted to encompass a broad class of post-review proceedings, including inter partes reexamination, ex parte reexamination, post-grant review, and IPR. (ECF No. 261, 9). The Court disagrees. In 2011, the AIA replaced inter partes reexamination with IPR. Abbott Labs, 710 F.3d at 1326 (citing 35 U.S.C. §§ 311-319 (2013)). While some elements of inter partes reexamination remained unchanged — for example, both procedures concern only §§ 102 and 103 challenges, both limit consideration of prior art to patents and printed publications, and both permit a patentee to revise or amend patent claims — the reform was crafted to convert inter partes reexamination from an examinational to an adjudicative proceeding. Id.; see also

5

ScentAir Techs., Inc. v. Prolitec, Inc., IPR2013-00179, at *4 (PTAB Apr. 16, 2013) ("An inter partes review is not original examination, continued examination, or reexamination of the involved patent. Rather, it is a trial, adjudicatory in nature and constituting litigation."). Adopting Defendants' reading of "reexamination petition" would vitiate the changes implemented under the AIA.  In the Court's view, the distinction between an examinational and an adjudicatory proceeding is clearly more than a meaningless procedural alteration or change in name.  The stipulated prosecution bar was negotiated and finalized in July, 2013, two years after the AIA was signed into law and nearly one year after the provisions authorizing IPR became effective in September, 2012.  If Defendants wished to include IPR in the list of specifically prohibited proceedings, they should have negotiated for language identifying, for example, "IPR" or "post-grant review."  The Court will not adopt Defendants' overly expansive reading of "reexamination petition" as used in the stipulated prosecution bar.

Next, the Court considers whether the stipulated prosecution bar contemplates IPR as a form of "participat[ing] in or be[ing] responsible for ... drafting or revising patent claims." Unlike the former prohibition, the language "drafting or revising patent claims" excludes types of action rather than specific proceedings.  On this point, it is undisputed that IPR proceedings (including the Ford-IPR) may, upon a motion by the patent owner or joint motion by the parties to the IPR, result in amendments to challenged claims.  See 35 U.S.C. § 316(d); 37 C.F.R. § 42.121.  Plaintiffs accordingly concede that if they file such a motion in the Ford-IPR, Plaintiffs' litigation counsel (or experts, consultants, etc.) having personally received Defendants' confidential materials will not "participate in or be responsible for" the motion or amending/revising any challenged claims. (ECF No. 219, 10-11).  Defendants, however, dispute that Plaintiffs' concession complies with the negotiated prosecution bar or adequately protects

Defendants' confidential information from inadvertent use by Plaintiffs during the Ford-IPR. (ECF No. 261, 11-19).

IPR is a relatively new proceeding, and few courts have considered the extent to which IPR requires or permits litigation counsel (or experts, consultants, etc.) to engage in patent prosecution. The Court is not aware of any authority in this District or the Fourth Circuit addressing this question, and thus, looks elsewhere for guidance. The majority of authority on this topic, unsurprisingly, comes from the Northern District of California, where courts have **uniformly**: (1) found that IPR proceedings constitute "prosecution" covered by the district's Model Prosecution Bar,[4] and (2) granted exemptions from the Bar so that litigation counsel may participate in IPR proceedings, so long as litigation counsel is prohibited from any involvement in crafting or amending challenged claims. See, e.g., Evolutionary Intelligence, LLC v. Foursquare Labs, No. MMC-13-04203, 2014 WL 1311970, at *3-4 (N.D. Cal. Mar. 29, 2014); e.g., Software Rights Archive, LLC v. Facebook, Inc., No. RMW-12-03970, 2014 WL 116366, *3-4 (N.D. Cal. Jan. 13, 2014); e.g., LifeScan Scotland, Ltd. v. Shasta Tech., LLC, No. WHO-11-04494, 2013 WL 5935005, at *5 (N.D. Cal. Nov. 4, 2013); e.g., Grobler v. Apple Inc., No. JST-12-01534, 2013 WL 3359274, *1-2 (N.D. Cal. May 7, 2013). The district court for the Eastern District of Wisconsin reached the same result in Prolitec, Inc. v. ScentAir Tech., Inc.,

---

[4] In relevant part, the Northern District of California Interim Model Protective Order contains the following Prosecution Bar:
> Absent written consent from the Producing Party, any individual who receives access to "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL - SOURCE CODE" information shall not be involved in the prosecution of patents or patent applications relating to [insert subject matter of the invention and of highly confidential technical information to be produced], including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("The Patent Office"). **For purposes of this paragraph, "prosecution" includes directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims.** ...

Patent L.R. 2-2 Interim Model Protective Order (N.D. Cal. 2009)(emphasis added).

granting a limited exemption from the stipulated prosecution bar[5] entered in that case so that the patent owner's lead and backup counsel before the PTO could participate in an IPR filed by the defendant, but could not "amend, substitute, or add claims to either patent during that proceeding." 945 F. Supp. 2d 1007, 1010-11 (E.D. Wis. 2013)(citation omitted).

Software Rights Archive is exemplary of the reasoned analysis of courts in Northern District of California having considered this issue. There, the plaintiff patent owner sought to clarify or modify the Northern District of California Model Prosecution Bar such that its litigation counsel could participate in ongoing IPR proceedings initiated by the defendants. 2014 WL 116366, at *1. In deciding the motion, the court recognized that IPR proceedings carry the potential to modify the scope or maintenance of challenged patent claims using confidential information learned during litigation. Id. at *3 (observing that "even though [plaintiff's] litigation counsel may not use confidential information to expand the scope of the claims, it could use such information to prophylactically cede claim scope through limiting arguments"); see also, e.g., Grobler, 2013 WL 3359274, at * 1 (while IPR does not permit the broadening of patent claims, "the fact remains that claims may still be restructured in these proceedings in a way that would undoubtedly benefit from access to an alleged infringer's proprietary information"). As such, the court confirmed that IPR falls within the broad definition of "prosecution" activities prohibited by Northern District of California's Model Prosecution Bar. Software Rights Archive, 2014 WL 116366, at *3. This did not end the analysis, however, because under Deutsche Bank courts must also consider whether a prosecution bar nevertheless

---

[5] In Prolitec, the parties' stipulated protective order included the following prosecution bar:
> Persons for a receiving party (including without limitation outside counsel and EXPERTS) who access "CONFIDENTIAL - ATTORNEYS' EYES ONLY" materials of any producing party shall not ... **draft, supervise, assist, or advise in drafting or amending patent claims or patent specifications** in the U.S. or abroad ...

945 F. Supp. 2d at 1009 (emphasis added).

should be modified in light of: (1) whether counsel's representation of the client before the PTO implicates "competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation" and (2) the balance of hardships faced by each party. See Id. (citing Deutsche Bank, 605 F.3d at 1381). Ultimately, the court determined that the balance of equities favored permitting the plaintiff's litigation counsel limited participation in the IPR, noting particular concern "about a policy that would encourage defendants to file for reexamination while excluding plaintiff's counsel from participating in the reexamination, thereby forcing a plaintiff to defend a patent in two separate venues with two teams of attorneys." Id.; see also Grobler, 2013 WL 3359274, at *2 ("Especially where, as here, reexamination or review proceedings are really nothing more than an extension of the litigation in the district court, there is even less of a reason to impose a total ban of the kind [defendant] seeks. It would be one thing if the two matters were truly independent of one another. But if the PTO and district court are just two fronts in the same battle, allowing a limited role for a patentee's litigation counsel while prohibiting counsel from crafting or amending claims is only reasonable.").

In Evolutionary Intelligence, the Northern District of California considered a discovery dispute more akin to the present one — whether a plaintiff's litigation counsel may represent it in a pending IPR initiated by **defendants in other cases**. 2014 WL 1311970, at *1 (emphasis added). There, the court observed that the fairness concerns explained in Software Rights Archive and other like cases — that a defendant could force litigation in two forums, interfere with the plaintiff's choice of counsel, and force the plaintiff to defend its patents with two different legal teams in two forums — were not present because the defendants did not initiate the IPR and were not participating in it. Id. at *3. On the other hand, the Evolutionary

Intelligence court noted, the defendants could still potentially advantage from the efforts of other defendants in the separate IPR proceedings and avoid the estoppel provisions of 35 U.S.C. § 315(e) in the instant litigation.  Id.  As such, the balance of hardships under Deutsche Bank did not weigh as strongly in favor of the plaintiff patent owner as they did in cases such as Software Rights Archive and Grobler.  Ultimately, however, the court still modified the Northern District of California Model Bar such that the plaintiff's counsel could participate in the separate IPR proceedings, but not contribute in any way to crafting or amending patent claims.  Id. at 3-4.

Having reviewed the stipulated prosecution bar entered in this case and the weight of the limited case law addressing this topic, the Court is persuaded that Plaintiffs' proposed limitation on their litigation counsels' (or experts, consultants, etc.) participation in the Ford-IPR complies with the most accurate reading of the existing prosecution bar.  The parties negotiated and stipulated to the prosecution bar entered in this case, which prohibits only "participat[ing] in or be[ing] responsible for ... drafting or revising patent claims."  (ECF No. 64, ¶ 5).  By its terms, this bar is not nearly as restrictive as the Northern District of California Model Prosecution Bar — "'prosecution' includes directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims" — or the stipulated bar entered in Prolitec — "shall not ... draft, supervise, assist, or advise in drafting or amending patent claims or patent specifications."  Patent L.R. 2-2 Interim Model Protective Order (N.D. Cal. 2009); 945 F. Supp. 2d at 1009. Rather, the plain meaning of the stipulated bar entered in this case, with respect to IPR, prohibits anyone having received confidential discovery materials from direct participation in or responsibility for a motion to amend challenged claims brought pursuant to 35 U.S.C. § 316(d) and 37 C.F.R. § 42.121.  Plaintiffs have conceded that their litigation counsel and/or other representatives will not take such action.  Consequently, the Court finds that the limited role

proposed by Plaintiffs does not run afoul of the stipulated prosecution bar negotiated by the parties. IPR proceedings are designed to resemble litigation and so long as Plaintiffs' litigation counsel (experts, consultants, etc.) do not cross the line and participate, in any way, in revising or amending challenged claims, their involvement in the Ford-IPR falls within the parameters of the stipulated prosecution bar.

The instant motion, as presented by the parties, merely asks the Court to clarify the meaning of the existing prosecution bar. While this case is similar to Evolutionary Intelligence — and potentially presents a greater risk of inadvertent use of confidential information because Plaintiffs have made no showing that their litigation counsel (or experts, consultants, etc.) lack knowledge of the content of Defendants' confidential information — other than a single reference buried in their briefing,[6] Defendants have not formally, in the alternative, asked the Court to extend the existing bar to cover IPR proceedings or to impose a broader prosecution bar. See, e.g., Prolitec 945 F. Supp. 2d at 1009 (wherein the defendant opposed the plaintiff's motion to clarify the scope of the stipulated patent prosecution bar **and** filed a motion to enjoin litigation counsel from participating in the IPR proceeding). Because Defendants did not file a motion, the parties' briefs contain only vague references to whether "good cause" exists in this case to enter a prosecution bar covering IPR. Importantly, neither party (in particular, Plaintiffs) has identified any specific individuals (as counsel, experts, or otherwise) involved in representing Plaintiffs in the Ford-IPR or has explained each person's relative level of review and analysis of Defendants' confidential materials, including source code. Thus, on the current record, the Court cannot meaningfully assess whether the Ford-IPR presents an unacceptable risk of competitive decisionmaking informed by the inadvertent use and disclosure of Defendants' confidential

---

[6] Defendants stated, "[e]ven if the Court were to find that the prosecution bar does not currently cover IPR proceedings, good cause exists to modify the Confidentiality Order." (ECF No. 261, 15).

information.[7] See id. at 1378-81. Nor can the Court determine, on a counsel-by-counsel or individual-by-individual basis, whether any exemptions from an extended or modified prosecution bar might be warranted. See id. at 1381. In sum, Deutsche Bank counsels that each case should be decided on the specific facts involved therein, and the evidentiary record currently before this Court does not permit such adjudication. See id. at 1379 (citing U.S. Steel Corp. v. United States, 730 F.2d 1465, 1467-68 (Fed. Cir. 1984)).

**III. Conclusion**

For the foregoing reasons, it is hereby ORDERED that Plaintiffs' motion to clarify the confidentiality order (ECF No. 219) is GRANTED in PART, in that under the terms of the stipulated order, Plaintiffs' representatives (including, but not limited to, experts, consultants, Outside Consultants, Counsel of Record, or in-house or outside counsel) may participate in the Ford-IPR insofar as any individual who personally received any material designated "CONFIDENTIAL," "OUTSIDE - ATTORNEYS' EYES ONLY," ["]OUTSIDE - ATTORNEYS' EYES ONLY - SOURCE CODE" shall not use that information in the Ford-IPR and shall not participate in or be involved with drafting or revising any new claims or claim amendments.

However, to permit appropriate analysis under Deutsche Bank, it is FURTHER ORDERED that Plaintiffs shall submit to the Court and Defendants, by **Monday, August 4, 2014**, a list of all individuals (including, but not limited to, experts, consultants, Outside Consultants, Counsel of Record, or in-house or outside counsel) who (1) may be involved in the

---

[7] See Deutsche Bank, 605 F.3d at 1380 ("patent prosecution" may involve "competitive decisionmaking" where an attorney is participating in "obtaining disclosure materials for new inventions and inventions under development, investigating prior art relating to those inventions, making strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such inventions, writing, reviewing, or approving new applications or continuations-in-part of applications to cover those inventions, or strategically amending or surrendering claims scope during prosecution").

Ford-IPR and (2) personally received any material designated "CONFIDENTIAL," "OUTSIDE - ATTORNEYS' EYES ONLY," "OUTSIDE - ATTORNEYS' EYES ONLY - SOURCE CODE" in this litigation.  The list should explain each individual's level of review and analysis of the protected material, sufficient to allow the Court's consideration under Deutsche Bank.  Thereafter, by **Wednesday, August 13, 2014**, Defendants shall submit a supplemental brief formally setting forth grounds for extending or modifying the existing prosecution bar.  Plaintiffs shall file their reply, which should include any arguments for exemptions, on or before **Wednesday, August 20, 2014**.  In setting these deadlines, the Court assumes that Plaintiffs' list of individuals will be relatively short.  If the list proves lengthy, Defendants may seek a reasonable extension of time.

Date:  __7/29/2014__                                    _____/s/_____
                                                                                Stephanie A. Gallagher
                                                                                United States Magistrate Judge