IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PAICE, LLC, et al., | * | |
|    Plaintiffs | * | |
| v. | * | CIVIL NO. WDQ-12-0499 |
| HYUNDAI MOTOR COMPANY, et al., | * | |
|    Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### Memorandum Order

Presently pending before the Court is Defendants' request to modify the prosecution bar in order to prohibit Plaintiffs' proposed individuals from participating in the inter partes review initiated by third-party Ford Motor Company ("Ford-IPR"). (ECF No. 435). I have also reviewed Plaintiffs' supplemental information regarding their proposed individuals, and Plaintiffs' response to Defendants' request to modify. (ECF Nos. 426, 444). No hearing is necessary. Local Rule 105.6 (D. Md. 2014). For the reasons set forth herein, Defendants' request is DENIED.

**I. Background**

By way of brief background, the parties stipulated to the existing prosecution bar in July, 2013. (ECF No. 64, ¶ 5). On July 29, 2014, this Court clarified that the prosecution bar, as currently written, does not cover inter partes review ("IPR") proceedings. (ECF No. 405). Hence, under the terms of the prosecution bar, Plaintiffs' representatives may participate in the Ford-IPR insofar as any individual who personally received any material designated "CONFIDENTIAL," "OUTSIDE – ATTORNEYS' EYES ONLY," "OUTSIDE – ATTORNEYS' EYES ONLY – SOURCE CODE" shall not use that information in the Ford-IPR

1

and shall not participate in or be involved with drafting or revising any new claims or claim amendments. (ECF No. 405). Nevertheless, Plaintiffs were instructed to provide a detailed list of all individuals who (1) may be involved in the Ford-IPR, and (2) personally received any confidential materials in the instant litigation, so the Court could properly assess whether the prosecution bar **should** cover IPR proceedings pursuant to In re Deutsche Bank Trust Co. Americas, 605 F.3d 1373, 1378–81 (D.C. Cir. 2010), and, if so, whether any exemptions from an extended prosecution bar would be warranted. See id. at 1381. I am satisfied that the information the parties have now provided is sufficient for a proper analysis under Deutsche Bank.

## II.  Legal Standard

Because the current prosecution bar does not cover IPR proceedings, Defendants must first demonstrate good cause to modify the prosecution bar to include such proceedings, and in effect to prohibit Plaintiffs' proposed individuals from participating in the Ford-IPR. See EdiSync Sys., LLC v. Adobe Sys., Inc., No. 12-CV-02231, 2013 WL 561474, at *1 (D. Colo. Feb. 13, 2013) (citing Deutsche Bank, 605 F.3d at 1378) ("As the party seeking to expand the scope and duration of the prosecution bar, Defendant bears the burden of demonstrating good cause for the additional restrictions."); Minogue v. Modell, No. 03-3391, 2012 WL 4105312, at *4 (D. Md. Sept. 17, 2012) ("The party seeking to modify a protective order bears the burden of showing good cause for the modification."); Fed. R. Civ. P. 26(c).

Under Deutsche Bank, good cause exists if Defendants can demonstrate, on a counsel-by-counsel basis, an unacceptable risk of competitive decisionmaking informed by the inadvertent use and disclosure of confidential information. 605 F.3d at 1378–81. "It is not enough to identify a general risk that confidential information disclosed during litigation may influence

counsel's representation of a party before the [U.S. Patent and Trademark Office (PTO)]." PPC Broadband, Inc. v. Times Fiber Commc'ns, Inc., No. 5:13-CV-0460, 2014 WL 859111, at *3 (N.D.N.Y. Mar. 5, 2014). Rather, there must be a showing of specific prejudice or harm that will result if the modification is not made. Avago Techs. Fiber IP (Singapore) PTE., Ltd. v. IPtronics, Inc., No. C 10-02863, 2011 WL 5975243, at *1 (N.D. Cal. Nov. 29, 2011).

If the Court is satisfied that such a risk exists, it "must balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." Deutsche Bank, 605 F.3d at 1380. Accordingly, Plaintiffs — the party that would seek an exemption from a modified prosecution bar — "must show on a counsel-by-counsel basis: (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use." Id. at 1381.

**III. Analysis**

Whether modifying the current prosecution bar to include IPR proceedings is appropriate essentially turns on the extent to which Plaintiffs' proposed individuals would be involved in competitive decisionmaking in the Ford-IPR. The Federal Circuit defined competitive decisionmaking as "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions . . . made in light of similar or corresponding information about a competitor." U.S. Steel Corp. v. U.S., 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984).

In Deutsche Bank, the Federal Circuit provided examples of activities that likely amount to competitive decisionmaking: "obtaining disclosure materials for new inventions and inventions under development, investigating prior art relating to those inventions, making strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such inventions, writing, reviewing, or approving new applications or continuations-in-part of applications to cover those inventions, or strategically amending or surrendering claim scope during prosecution."  605 F.3d at 1380.  Besides these specific examples, the Federal Circuit explained there was a range of activities in which counsel could "shape the content of a patent application" or "have the opportunity to influence the direction of prosecution."  Id.

Defendants maintain that each individual listed by Plaintiffs should be considered a competitive decisionmaker mainly because of their high level of exposure to and/or detailed review of Defendants' confidential materials.  Defs. Req. to Modify 2.  Defendants' focus is misplaced, however.  "Competitive decisionmaking" centers primarily on Plaintiffs' proposed individuals' level of involvement in the Ford-IPR, not their level of review of Defendants' confidential materials.  See Deutsche Bank, 605 F.3d at 1379–80 (discussing different levels of involvement in patent prosecution as they relate to the risk of inadvertent use or disclosure of confidential information learned as counsel for concurrent patent litigation).

It is true that counsel's level of review of the opposing party's confidential materials is a factor to consider.  In Evolutionary Intelligence, LLC v. Foursquare Labs, for example, the court found persuasive the fact that plaintiff's litigation counsel did not substantively review the defendant's confidential materials.  No. C 13-04203, 2014 WL 1311970, at *3 (N.D. Cal. Mar. 29, 2014).  While the court considered this factor in relation to the risk of inadvertent disclosure of such materials, ultimately the court was guided by how involved plaintiff's litigation counsel

4

would be in the IPR.[1]  Id. at *2.  Thus, I am not convinced that Plaintiffs' proposed individuals' level of review of Defendants' confidential materials is more or even equally significant as the actual tasks they will perform in the Ford-IPR.  Rather, I agree with Plaintiffs' assertion that the level of review serves as additional support for why there is little or great risk of inadvertent disclosure of confidential information.

Under these guidelines, I do not find that any of Plaintiffs' proposed individuals — litigation counsel, expert witness, or client representative — will engage in competitive decisionmaking informed by the inadvertent use and disclosure of Defendants' confidential information in the Ford-IPR.  None of the tasks proposed by Plaintiffs involve the level of "substantial[] engage[ment]" with the IPR that Deutsche Bank cautioned against.  605 F.3d at 1380.  Moreover, many of the tasks are similar to those proposed in Evolutionary Intelligence, such as preparing or reviewing briefing and declarations, and taking or defending depositions.  Pl. Supp. Info. 1–4.  The Court recognizes that plaintiff's litigation counsel in Evolutionary Intelligence conducted only a "cursory review" of the opposing party's confidential materials, while in this case several of Plaintiffs' litigation counsel conducted a "detailed review" of Defendants' confidential information.  However, I am satisfied that the confidentiality conditions placed on the parties in the Stipulated Confidentiality Order, (ECF No. 64), are sufficient to mitigate the danger of inadvertent use or disclosure of Defendants' confidential materials if or when Plaintiffs' litigation counsel engages in these activities.

In Shared Memory Graphics, LLC v. Apple, Inc., for example, the court acknowledged

---

[1] The court noted that litigation counsel's tasks in the IPR "are nearly identical to the tasks that she will perform in this litigation, including, for example, participating in: (i) preparing declarations for the witnesses of the patent owner; (ii) defending depositions of the patent owner's witnesses; (iii) reviewing documents of the inventor pertinent to issues in both the litigation and the IPR; (iv) reviewing the prior art raised in the IPR petitions; (v) taking depositions of the Petitioner's declarants; and (vi) discussing with [plaintiff's] patent counsel responses to arguments advanced by Petitioners."  Evolutionary Intelligence, 2014 WL 1311970, at *2 (internal quotation marks omitted).

that, even without the ability to broaden patent claims in reexamination proceedings, plaintiff's access to defendant's confidential information could still provide them with a "tactical advantage," though "the risk of advantage would appear to be somewhat marginal."  No. C-10-2475, 2010 WL 4704420, at *3 (N.D. Cal. Nov. 12, 2010).  Nevertheless, the court found sufficient an imposition of express confidentiality obligations on the parties to mitigate any risk of plaintiff's tactical advantage.  Id. at *4 (citing Crystal Image Tech., Inc. v. Mitsubishi Elec. Corp., No. 08-307, 2009 WL 1035017, at *3–4 (W.D. Pa. Apr. 17, 2009); see also EdiSync Sys., 2013 WL 561474, at *2 ("In the interest of capturing Defendant's concerns more explicitly, [the] Court will follow the Shared Memory decision and modify the proposed Protective Order to expressly prohibit use of the confidential information in any present or future reexamination activities.").  Here, the parties have already included express confidentiality obligations in their Stipulated Confidentiality Order.  I find this limitation sufficient.

Defendants argue that "ensuring consistency between the positions taken in the litigation and in the IPR proceedings," (Pl. Supp. Info. 1, 3), will allow Plaintiffs' litigation counsel to use Defendants' confidential materials to "influence and inform validity arguments" and "propose arguments and strategies that will impact the scope and validity of Plaintiffs' patent claims."  Defs. Req. to Modify 5, 7.  Yet Defendants have failed to provide any support for this assertion, likely because Plaintiffs have a "legitimate interest in formulating a coherent and consistent litigation strategy."  Xerox Corp. v. Google, Inc., 270 F.R.D. 182, 185 (D. Del. 2010); see also Endo Pharm., Inc. v. Actavis, Inc., No. 12-8985, 2014 WL 3950900, at *3 (S.D.N.Y. Aug. 13, 2014) (noting that coordination between litigation counsel and patent prosecution counsel in defending against invalidity challenges "presents minimal risk of the inadvertent disclosure of confidential information").  Because the IPR proceedings will have a direct effect on this

litigation, "ensuring consistency" between the positions taken in each forum is entirely reasonable.

Moreover, I am satisfied that the prohibition in the current prosecution bar that Plaintiffs' representatives "not participate in or be responsible for . . . drafting or revising patent claims" constitutes sufficient protection to mitigate the risk that Plaintiff's litigation counsel could influence the Ford-IPR in the way Defendants claim. See, e.g., Grobler v. Apple, Inc., No. C 12-01534, 2013 WL 3359274, at *2 (N.D. Cal. May 7, 2013) ("Apple does not show that, in defending the validity of the disputed patents, Grobler's litigation counsel would be engaged in the type of 'competitive decisionmaking' that would unduly risk inappropriate use of Apple's proprietary information. Things might be different if counsel had free rein in the PTO proceedings. But under Grobler's proposal, litigation counsel is prohibited from assisting in any crafting or amendment of patent claims."); EPL Holdings, LLC v. Apple, Inc., C-12-04306, 2013 WL 2181584, at *4 (N.D. Cal. May 20, 2013) ("The Court concludes that EPL's litigation counsel, as with the litigation counsel in Grobler, may participate in third-party initiated review proceedings so long as counsel is prohibited from assisting in any crafting or amendment of patent claims."); LifeScan Scotland, Ltd. v. Shasta Techs., LLC, No. 11-CV-04494, 2013 WL 5935005, at *6 (N.D. Cal. Nov. 4, 2013) ("The defendants are suitably protected by an order that bars the specified individuals from using the defendants' confidential information in any proceedings in the PTO and bars them from any involvement in drafting any new claims or claim amendments.").

Lastly, Defendants' concerns about what Plaintiffs' proposed individuals — in particular their expert witness and client representative — could do with Defendants' confidential information are too general. Defendants are required to demonstrate a **specific** showing of harm

or prejudice, yet they largely have made only general assertions with no support.  In Chiesi USA, Inc. v. Sandoz, Inc., the court stressed that the defendant proffered "no specific facts" about the nature and extent of plaintiff's counsel or designees' engagement with the patent prosecution; rather, the defendant merely argued that plaintiff's representatives "cannot compartmentalize and appropriately segregate any confidential information obtained in the context of this litigation." No. 13-5723, 2014 WL 4182351, at *5 (D.N.J. Aug. 21, 2014).  Defendants' similar assertion that Plaintiffs' expert witness cannot compartmentalize his knowledge of Defendants' source code and Plaintiffs' infringement claims while providing his expert opinion in the Ford-IPR is unpersuasive.  Likewise, Defendants' assertion that Plaintiffs' client representative is the "very definition of a competitive decisionmaker" is void of any explanation whatsoever.

In sum, I find that Defendants have not shown that Plaintiffs' proposed individuals will engage in competitive decisionmaking in the Ford-IPR.  Accordingly, Defendants have not demonstrated good cause to modify the existing prosecution bar to cover IPR proceedings.[2]

## IV. Conclusion

For the foregoing reasons, it is hereby ORDERED that Defendants' request to modify the prosecution bar (ECF No. 435) is DENIED.

Date: ____9/29/2014____                              _____/s/_____
                                                      Stephanie A. Gallagher
                                                      United States Magistrate Judge

---

[2] Because Defendants have not met their burden, the counsel-by-counsel analysis weighing appropriate exemptions to the prosecution bar is unnecessary.  Had they met this burden, however, the risk to Defendants would have to be balanced against the potential harm to Plaintiffs in not having the benefit of counsel of its choice.  Deutsche Bank, 605 F.3d at 1380.  I find this harm far greater, considering Plaintiffs' litigation counsel's longstanding relationship with their client, their extensive knowledge of Plaintiffs' patents, and the additional expense Plaintiffs would have to bear to compensate a brand new litigation team.