IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

PAICE LLC, *et al.*,

    Plaintiffs,

       v.

HYUNDAI MOTOR COMPANY, *et al.*,

    Defendants.

CIVIL NO.: WDQ-12-0499

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Paice LLC ("Paice") and The Abell Foundation, Inc. ("Abell") (collectively, the "Plaintiffs") sued Hyundai Motor Company, Hyundai Motor America (together, "Hyundai"), and others[1] (collectively, the "Defendants") for patent infringement. Pending are non-party Toyota Motor Corp.'s ("Toyota") motion for reconsideration of Magistrate Judge Susan K. Gauvey's decision allowing Abell to discover a Toyota/Paice settlement agreement, and the Defendants' motions for leave to file second, third, and fourth invalidity contentions. For the following reasons, Toyota's motion will be denied, and the Defendants' motions will be granted in part and denied in part.

---

[1] The other defendants are Kia Motors Corporation and Kia Motors America, Inc. (together, "Kia"). *See* ECF No. 52, Ex. 1 (hereinafter "2d Am. Compl.").

I.   Background[2]

   A.   The Parties

   Paice is a Delaware limited liability company with a place
of business in Bonita Springs, Florida.  2d Am. Compl. ¶ 1.
Since Paice was established in 1992 by Doctor Alex J.
Severinsky, the company has developed "innovative hybrid
electric technology" to promote fuel efficiency, lower
emissions, and "superior driving performance."  Id.  According
to Paice, its hybrid patents are "well known" in the automotive
industry.  Id. ¶ 30.[3]  Abell, a Maryland corporation, is a
nonprofit charitable organization whose objectives include
increasing energy efficiency and producing alternative energy.
Id. ¶ 2.  In 1998, Abell was introduced to Paice and has become
an equity owner of the company.  Id.  Hyundai Motor Company and
Kia Motors Corporation are Korean companies.  Id. ¶¶ 3-4.
Hyundai Motor America is a California subsidiary of Hyundai
Motor Company, id. ¶ 5; Kia Motors America, Inc. is a California
subsidiary of Kia Motors Corporation, id. ¶ 6.  Hyundai and Kia

---

[2] The facts are from the Plaintiffs' second amended complaint
(ECF No. 52, Ex. 1); Toyota's motion for a protective order (ECF
No. 177), the Plaintiffs' opposition to Toyota's protective
order (ECF No. 186); Judge Gauvey's memorandum opinion (ECF No.
355); Toyota's motion for reconsideration (ECF No. 390); Abell's
opposition (ECF No. 416); and Toyota's reply (ECF No. 440).

[3] For instance, in 2010, IP firm Griffith Hack published a study
in which it found that Paice owns four of the world's 10 most
dominant hybrid vehicle patents.  2d Am. Compl. ¶ 30.

are "related companies" and share information and technology. *Id.* ¶ 34.

>    B.    The Patents in Suit

Paice and Abell are co-owners of U.S. Patent Nos. 6,209,672 (the "'672 patent");[4] 7,104,347 (the "'347 patent");[5] 7,237,634 (the "'634 patent");[6] 7,559,388 (the "'388 patent");[7] and 8,214,097 (the "'097 patent").[8]   2d Am. Compl. ¶¶ 11-16.   The '347, '634, '388, and '097 patents issued from continuation-in-part applications relating to the '672 patent.   *Id.* ¶ 16.   The '672 patent is entitled "Hybrid Vehicle" and protects a "hybrid electric vehicle that is fully competitive with presently conventional vehicles in performance, operating convenience, and cost, while achieving substantially improved fuel economy and reduced pollutant emissions."   '672 patent, Col. 1, ll.13-18.[9]

---

[4] The '672 patent issued on April 3, 2001.   Am. Compl. ¶ 14.

[5] The '347 patent issued on September 12, 2006.   *Id.* ¶ 12.

[6] The '634 patent issued on July 3, 2007.   *Id.* ¶ 11.

[7] The '388 patent issued on July 14, 2009.   *Id.* ¶ 13.

[8] The '097 patent issued on July 3, 2012.   *Id.* ¶ 15.

[9] The '672 patent is attached to the first amended complaint at ECF No. 27-2.

C.    Procedural History

On February 16, 2012, the Plaintiffs sued the Defendants

for directly, indirectly, and willfully infringing the '634,

'347, and '388 patents, in violation of 35 U.S.C. § 271.   ECF

No. 1.   On May 22, 2012, the Defendants moved to dismiss.   ECF

No. 14.   On June 8, 2012, the Plaintiffs opposed the motion and

moved for leave to file an amended complaint.   ECF No. 24.   On

June 13, 2012, the Court denied the Defendants' motion to

dismiss as moot and deemed the proposed amended complaint filed

as of June 13, 2012.   ECF No. 26.   Also on June 13, 2012, the

Plaintiffs filed the first amended complaint.   ECF No. 27.[10]   On

June 27, 2012, the Defendants moved to dismiss for failure to

state a claim.   ECF No. 29.   On July 16, 2012, the Plaintiffs

opposed the motion.   ECF No. 30.   On July 30, 2012, the

---

[10] The amended complaint alleged eight causes of action: direct,
indirect, and willful infringement of the '634 patent, against
Hyundai (Count One); direct, indirect, and willful infringement
of the '634 patent, against Kia (Count Two); direct, indirect,
and willful infringement of the '347 patent, against Hyundai
(Count Three); direct, indirect, and willful infringement of the
'347 patent, against Kia (Count Four); direct, indirect, and
willful infringement of the '388 patent, against Hyundai (Count
Five); direct, indirect, and willful infringement of the '388
patent, against Kia (Count Six); direct, indirect, and willful
infringement of the '672 patent, against Hyundai (Count Seven);
and direct, indirect, and willful infringement of the '672
patent, against Kia (Count Eight).   ECF No. 27 ¶¶ 36-90.
    The complaint sought judgments that Hyundai and Kia have
infringed the patents in suit; compensatory damages; pre- and
post-judgment interest; attorney's fees; and a permanent
injunction prohibiting further infringement (or, alternatively,
determination of an ongoing royalty).   Id. at 27-28.

Defendants replied.  ECF No. 31.  On March 27, 2013, the Court
denied the Defendants' motion to dismiss.  ECF Nos. 32, 33.

On April 10, 2013, the Defendants answered the amended
complaint and asserted counterclaims for declaratory judgment of
the invalidity and non-infringement of the patents.  ECF No. 34
at 15-19.  On May 6, 2013, the Plaintiffs answered the
Defendants' counterclaims.  ECF No. 38.  On May 20, 2013, the
Court entered a scheduling order pursuant to Local Rule 103.9.
ECF No. 49.  On May 28, 2013, the Court modified the scheduling
order to limit the number of proposed terms for construction to
15, and to limit the number of asserted claims to 30 within 15
days of the claim construction ruling.  ECF No. 50.

On June 7, 2013, the Plaintiffs moved for leave to file a
second amended complaint adding the '097 patent to the case.
ECF No. 52.[11]  On June 13, 2013, the Court entered a scheduling
order superseding the May 20, 2013 order.  ECF No. 53.  The new
scheduling order required any motion to amend the pleadings to
be filed within 60 days of the order.  *Id.* at 1 ¶ 8.  On June
24, 2013, the Defendants opposed the motion for leave to amend.
ECF No. 56.  On July 5, 2013, the parties submitted a joint

---

[11] The second amended complaint alleges two additional causes of
action: direct, indirect, and willful infringement of the '097
patent, against Hyundai (Count Nine) and direct, indirect, and
willful infringement of the '097 patent, against Kia (Count
Ten).  2d Am. Compl. ¶¶ 93-104.

discovery plan.  ECF No. 58.  On July 12, 2013, the Plaintiffs replied.  ECF No. 62.

On August 13, 2013, the Defendants served the Plaintiffs with their invalidity contentions.  *See* ECF No. 429-1 at 2.  On November 5, 2013, the Defendants moved for leave to serve first amended invalidity contentions.  ECF No. 74.  On November 6, 2013, the case was referred to Magistrate Judge Susan K. Gauvey for discovery. ECF No. 76.  On December 17, 2013, the Court granted leave to file a second amended complaint.  ECF Nos. 92-93.  On January 3, 2014, the Plaintiffs answered the amended complaint and counterclaimed.  ECF No. 97.

On January 14, 2014, the Court held a claim construction hearing.  ECF No. 106.  On May 30, 2014, the Defendants moved for leave to serve second amended invalidity contentions.  ECF No. 256.  On June 16, 2014, the Plaintiffs opposed that motion.  ECF No. 309.  On July 3, 2014, the Defendants replied.  ECF No. 353.  On July 24, 2014, the Court issued its claim construction findings[12] and denied the Defendants' motion to file first invalidity contentions.  ECF Nos. 399-400.

On August 19, 2014, the Defendants moved for leave to serve third amended invalidity contentions.  ECF No. 429.  On September 15, 2014, the Plaintiffs opposed the motion for leave

---

[12] The Court's scheduling order required motions to amend invalidity contentions to "be filed within 60 days of the Court's claim construction ruling."  ECF No. 51-1 at 7.

to serve third amended invalidity contentions.  ECF No. 448.  On September 22, 2014, the Defendants replied.  ECF No. 452.  On September 22, 2014, the Defendants moved for leave to serve fourth amended invalidity contentions.  ECF No. 454.  On October 9, 2014, the Plaintiffs opposed the motion.  ECF No. 463.  On October 27, 2014, the Defendants replied.  ECF No. 472.

II.  Toyota's Motion for Reconsideration

A. The Discovery Dispute

In July 2010, non-party Toyota and Paice entered into a settlement agreement in which Toyota received a license for Paice's patents[13] in exchange for a royalty.  *See* ECF No. 186 at 7.  The settlement agreement included a confidentiality provision (Section 5.9) which states:

a) The terms of this Agreement are confidential and shall not be disclosed unless required by law.

b) Notwithstanding any provision to the contrary, a Party may disclose the Agreement:
   1. In connection with an order of a court or other government body or as otherwise required by or in compliance with law, litigation discovery, or regulations;  provided  that  the disclosing Party provides the other

---

[13] There is a dispute between Toyota and Paice about which patents were included in the license.  Paice contends that Toyota received "a license to Paice's *entire* patent portfolio . . . including all of the patents asserted against [the] Defendants in this case."  ECF No. 186 at 7.  Toyota asserts that the agreement and "the ITC litigation concerned only the now-expired '970 patent that is not even asserted against Hyundai."  ECF No. 177 at 5.

Party with reasonable notice to permit
the   other   Party   an   opportunity   to
intervene   and   oppose   disclosure,   if
available;

2. In confidence to the Party's attorneys,
accountants,   banks   and   financial
sources; or

3. In confidence, in connection with the
potential   or   actual   sale   of   all   or
substantially   all   of   the   business
assets to which this Agreement relates,
so long as, in each case, the entity to
which disclosure is made is bound to
confidentiality   on   terms   commensurate
with those set forth herein.

ECF Nos. 177 at 3; 186 at 8.

On January 22, 2014, in this suit, the Defendants moved to
compel the Plaintiffs to produce materials from the Paice-Toyota
litigation.  ECF No. 108.  Paice informed Toyota that it would
produce the settlement agreement under Section 5.9(b)(1) of the
confidentiality clause.  ECF No. 188 at 7.  On January 28, 2014,
Toyota moved to intervene.  ECF No. 111.  On April 3, 2014,
Toyota and the Defendants reached a resolution which included
the Defendants withdrawing their motion to compel.  ECF Nos.
167, 171.  Paice informed Toyota that it still intended to
produce the settlement agreement.  ECF No. 177, Ex. A.  On April
9, 2014, Toyota moved for a protective order.  ECF No. 177.  On
May 13, 2014, Judge Gauvey held a hearing on the protective
order.  ECF No. 217.  On May 30, 2014, the Plaintiffs moved to
compel Toyota to produce the settlement agreement.  ECF No. 251.

On July 7, 2014, Judge Gauvey issued a memorandum opinion and order.  ECF No. 355.

Judge Gauvey held that Paice could not use the settlement agreement in the current litigation because of the confidentiality provision.[14]  ECF No. 355 at 9-11.  However, Judge Gauvey found that Abell was not bound by the settlement agreement because Abell purchased its interest in the patents after the Paice-Toyota settlement negotiations, and Abell was not a successor, assign, or beneficiary[15] under Delaware law.[16] *Id.* at 25-31.  Although Judge Gauvey expressed doubt about the admissibility of the settlement agreement,[17] she determined that

---

[14] Judge Gauvey reached this result after engaging in very detailed contract interpretation under Delaware law.  *See* ECF No. 355 at 4-18.  Judge Gauvey held that although Paice would have been permitted to produce the agreement if the Defendants had maintained their motion to compel, Paice could not on its own initiative provide the agreement in the scope of discovery because it would defeat the purpose of the confidentiality provision -- Paice had negotiated away its right to use and produce the agreement.  *Id.* at 9-11.
   Further, Judge Gauvey determined that this was not truly an issue of discovery because Paice already had the settlement agreement, the dispute was about whether Paice could use the agreement in this suit.  *Id.* at 16.

[15] Section 5.7 of the settlement agreement states that the "agreement shall inure to the benefit of and shall be binding upon the Parties hereto and their successors, assigns, representatives, and beneficiaries."  ECF No. 355 at 25.

[16] The settlement agreement included a Delaware choice of law provision.  ECF Nos. 246, 247.

[17] "[T]he prejudicial concerns expressed by the Federal Circuit in *LaserDynamics* appear to readily apply to the Paice-Toyota

under the broad scope of discovery, Abell was entitled to production of the settlement agreement. *Id*. at 3.

On July 18, 2014, Toyota moved for reconsideration of whether Abell was bound by the confidentiality provision. ECF No. 390. On August 7, 2014, Abell opposed the motion for reconsideration. ECF No. 416. On August 28, 2014, Toyota replied. ECF No. 440.

B. Analysis

A district judge may refer nondispositive pretrial matters to a magistrate judge for hearing and determination. 28 U.S.C. § 636(b)(1). Under Fed. R. Civ. Pro. 72(a), a district judge may "modify or set aside" the magistrate judge's order on a nondispositive pretrial matter if "any part of the order [] is clearly erroneous or contrary to law." *See also* L.R. 301.5(a) (D. Md. 2014). "Under the clearly erroneous standard, the reviewing court is not to ask whether the finding is the best or only conclusion permissible based on the evidence. Nor is it to substitute its own conclusions for that of the magistrate judge." *Huggins v. Prince George's Cnty.*, 750 F.Supp.2d 549, 559 (D. Md. 2010). Rather, the Court is "only required to

Settlement Agreement. Yet, the issue before the undersigned is discoverability, not admissibility, and considering that the parties have yet to commence expert discovery or exchange expert reports, this question may be better left for the trial judge to consider when the record (including the expert reports) is fully developed." ECF No. 355 at 23.

determine whether the magistrate judge's findings are reasonable and supported by the evidence." *Id*. "It is not the function of objections to discovery rulings to allow wholesale relitigation of issues resolved by the magistrate judge." *Buchanan v. Consolidated Stores Corp.*, 206 F.R.D. 123, 124 (D. Md. 2002).

### 1. The Confidentiality Provision

Judge Gauvey determined that the confidentiality provision did not bind Abell because Abell was not a representative, beneficiary, assign, or successor under Delaware contract law. ECF No. 355 at 25-31. Toyota does not argue that Judge Gauvey erred in her legal analysis of Delaware contract law. Toyota asserts that Judge Gauvey erred when she relied on *Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368 (Fed. Cir. 2008), in determining that Abell's acquisition of the patent was not subject to the confidentiality agreement. ECF No. 390 at 3-5. According to Toyota, *Datatreasury* only applies to arbitration clauses, and to allow Abell, who is "in obvious privity" with Paice, to use the agreement, when Paice cannot, defies common sense. *Id.*

"[B]ecause the owner of a patent cannot transfer an interest greater than that which it possesses, an assignee takes a patent subject to the legal encumbrances thereon." *Datatreasury*, 522 F.3d at 1372 (*citing Worley v. Tobacco Co.*, 104 U.S. 340 (1881)). In *Datatreasury*, the appellants relied on

this general proposition in an attempt to bind non-signatories to a settlement agreement's arbitration clause, contrary to state contract law.  *Id*.  The Federal Circuit found that the legal encumbrances "deemed to run with the patent" were those that "involved the right to *use* the patented product, not a duty to arbitrate."  *Id*. (emphasis added).  "[P]rocedural terms of a licensing agreement unrelated to the actual use of the patent (e.g. an arbitration clause) are [not] binding on a subsequent owner of the patent."  *Id*. at 1372-73.

Although the Federal Circuit used the phrase "procedural terms of a licensing agreement," Toyota argues that this was only *dicta*, and, because the Federal Circuit relied on the Federal Arbitration Act[18] and the valuable rights associated with arbitration, Judge Gauvey should not have expanded *Datatreasury* to confidentiality provisions.  ECF No. 390 at 3-6.  The Federal Circuit did engage in a brief analysis of arbitration law; however, the court also cited the Fifth Circuit in support of the assertion that "requiring a non-signatory party to arbitrate solely on the basis of an arbitration clause in a license agreement between signatory parties *would be inconsistent with basic principles of contract law* . . . ."  *Datatreasury*, 522 F.3d at 1373.

---

[18] 9 U.S.C. §§ 2 *et seq*.

Abell was not a signatory to the settlement agreement and was not engaged in the negotiations. ECF Nos. 282 at 4-5; 304 at 8-11. Toyota attempts to circumvent these facts by asserting that Abell and Paice are "in obvious privity"[19] and implying that Abell's purchase of interest in the patent was an attempt to subvert the agreement.[20] ECF No. 390 at 2-3 ("Abell is not a bona fide purchaser for value unaware of the history between Paice and Toyota."); see also ECF No. 440 at 2 ("The facts here illustrate . . . [that] Abell and Paice, are, at the very least, closely-related and have all along been working together with respect to enforcement of the licensed patents."). Toyota argues "if Paice is allowed to avoid its confidentiality obligations by assigning a small interest to Abell, no confidentiality obligation in a settlement agreement will be

---

[19] Toyota does not discuss what "obvious privity" entails, but in its facts, Toyota asserts that Frances Keenan, who participated in the negotiations for Paice, is also an officer for Abell, and that Abell is Paice's primary investor. See ECF No. 390 at 3. With its response, Abell attached the affidavit of Abell's president which described Abell's reasoning for becoming a co-owner of the patents which was independent of the prior settlement agreement. See ECF No. 416, Ex. 2 ¶¶ 5-6.

[20] Toyota qualifies this argument in its reply. See ECF No. 440 at 5-6 ("Toyota does not argue that Abell and Paice conspired to circumvent Paice's confidentiality obligations at the time of Abell's purchase. Toyota argues that that is what they are doing now.").

enforceable against assignees in the future."[21]   ECF No. 390 at

2.   These conclusionary assertions do not alter the analysis.

Paice and Toyota contracted that their settlement agreement

would only bind successors, assigns, and beneficiaries.   ECF No.

355 at 25.   Judge Gauvey was aware of Abell's and Paice's

relationship and carefully considered those facts in her

analysis.   *Id.* at 25-28.   Toyota does not contend that she erred

in this analysis.   *See* ECF No. 390 at 3-5.   Despite Toyota's

assertion that Judge Gauvey's decision will destroy all future

confidentiality provisions, parties to a contract are free to

negotiate how and when the agreement will be binding on future

co-owners of a patent.   *See, e.g., Sassano v. CIBC World Markets

Co.*, 948 A.2d 453, 461-63 (Del. Ch. 2008); *Comrie v. Enterasys

Networks, Inc.*, 837 A.2d 1, 13 (Del. Ch. 2003).

The Court recognizes the potential problem posed by Toyota:

a patent owner, in bad faith, transferring interest in the

patent for the sole purpose of circumventing a confidentiality

provision.   *See* ECF No. 390 at 2.   However, Toyota's

hypothetical does not justify a future co-owner of a patent

being bound by procedural provisions of a contract it had no

part in negotiating.   Cf. *Datatreasury*, 522 F.3d at 1373.

---

[21] Toyota complains of Paice's ability to use the settlement
agreement through Abell.   *See, e.g.*, ECF No. 440 at 6-7.   Toyota
is confusing admissibility with discoverability.   *See infra* Part
II.B.2.

Although a future court may create an exception for patent
owners who transfer a patent interest for the sole purpose of
subverting a confidentiality agreement, Toyota has not shown
Judge Gauvey or this Court that this was Paice's intent. *See*
ECF Nos. 390 at 2-3; 440 at 2.

Under *Datatreasury*, "procedural terms of a licensing
agreement unrelated to the actual use of the patent . . . are
[not] binding on a subsequent owner of the patent." 522 F.3d at
1372-73. Judge Gauvey's determination was not contrary to the
law.

### 2. Admissibility of the Settlement Agreement

Toyota also argues that Abell should not be permitted to
discover the settlement agreement because it is inadmissible.
ECF No. 390 at 5. Abell contends that Toyota is confusing
admissibility and discoverability, and the Court should wait to
determine admissibility until after the record is more
developed. ECF No. 416 at 8-11. Toyota asserts that "discovery
and admissibility with respect to this settlement agreement are
collapsed into the same inquiry" because "this is not a
situation where Abell is arguing that the settlement agreement
may lead to discovery of some *other* admissible evidence. The
agreement itself is the only evidence at issue." ECF No. 440 at
6. In her memorandum opinion, Judge Gauvey expressed doubt that
the agreement was admissible under the Federal Circuit's

15

reasoning in *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012), but concluded that "the issue . . . [was] discoverability, not admissibility, and considering that the parties have yet to commence expert discovery or exchange expert reports, this question may be better left for the trial judge to consider when the record (including the expert reports) is fully developed."   ECF No. 355 at 23.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" or "appears reasonably calculated to lead to the discovery of admissible evidence."   Fed. R. Civ. P. 26(b)(1).   The courts should interpret discovery rules liberally, although there are "ultimate and necessary boundaries."   *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).   Abell contends that the settlement agreement is discoverable because it will aid Abell and its expert in developing an argument for reasonable royalties.   *See* ECF No. 416 at 8-11.

"Upon a showing of infringement, a patentee is entitled to 'damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.'"   *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868 (Fed. Cir. 2010) (quoting 35 U.S.C. § 284)). Guided by factors in *Georgia-Pacific Corp. v. United States*

*Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), reasonable royalties are "derive[d] from a hypothetical negotiation between the patentee and the infringer when the infringement began." *ResQNet.com*, 594 F.3d at 868.  One *Georgia-Pacific* factor is other licenses for the patent.  *See Georgia-Pacific Corp.*, 318 F. Supp. at 1120.

The Federal Circuit has cautioned against using a license that arose out of a settlement agreement as proof of a reasonable royalty.  *See, e.g.*, *LaserDynamics*, 694 F.3d at 77 ("The propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable.").  However, that caution is only the recognition that there are cases in which a license that resulted from litigation is the most reliable evidence of a reasonable royalty.  *See id*.  For example, in *ResQNet*, there were only two licenses that were relevant to determining a reasonable royalty, one of which arose through a settlement agreement.  594 F.3d at 872 ("This court observes as well that the most reliable license in this record arouse out of litigation.").  The Federal Circuit remanded that case and directed the district court to "consider the panoply of events and facts" surrounding the settlement agreement before determining the agreement's admissibility.  *Id*.

In contrast, in *LaserDynamics*, the plaintiff wanted to introduce a license from a settlement agreement to show a reasonable royalty, but the Federal Circuit found the agreement inadmissible. 694 F.3d at 78. The settlement agreement was reached on the eve of trial and resulted in a license that was a lump sum license six times greater than the rate of any other license. *Id.* at 77-78 ("The probative value of the BenQ settlement is dubious in that it has very little relation to demonstrated economic demand for the patented technology, and its probative value is greatly outweighed by the risk of unfair prejudice, confusion of the issues, and misleading the jury."). Additionally, there were 28 other licenses available to demonstrate a reasonable royalty. *Id.* ("This record stands in stark contrast to that in *ResQNet*, where a lone settlement agreement stood apart from all other licenses in the record as being uniquely relevant and reliable.").

Judge Gauvey cautioned that the "prejudicial concerns expressed by the Federal Circuit in *LaserDynamics* appear to readily apply to the Paice-Toyota Settlement Agreement." ECF No. 355 at 23. However, here, unlike *LaserDynamics*, there are not 28 other licenses from which to determine a reasonable royalty. *See* ECF No. 416 at 10 ("[T]here is a single Agreement, which constitutes the *only* license to the patents in suit and which resulted in Toyota, the largest manufacturer and seller of

hybrid vehicles in the world, taking a license to Paice's entire
patent portfolio . . . ."). [22]   In *ResQNet* and *LaserDynamics*, the
courts were determining the admissibility of a settlement
agreement after the conclusion of discovery and the submission
of expert reports.  *See LaserDynamics*, 694 F.3d at 62-65, 77;
*ResQNet.com*, 594 F.3d at 866-71.  Abell has requested the
settlement agreement so that it may be given to its damages
expert.  ECF No. 416 at 9, 11.  Because Abell has the burden of
showing a reasonable royalty, [23] the settlement agreement may be
relevant to the royalty analysis, [24] and the discovery rules must
be interpreted liberally, Judge Gauvey did not err in ordering
Toyota to produce the settlement agreement to Abell.  *See Bd. of
Trustees of Leland Stanford Junior Univ. v. Tyco Int'l*, 353
F.R.D. 521, 523 (C.D. Cal. 2008) (discussing the difference
between the discoverability and admissibility of settlement
agreements); *see also Tyco Healthcare Group v. E-Z-EM Inc.*, No.
2:07-CV-262 (TJW), 2010 WL 774878, at *2 (E.D. Tex. Mar. 2,
2010).  As this is an issue of discoverability and not
admissibility, the Court will not determine now if the

---

[22] There is also a disagreement between Toyota and Abell about
whether the license includes the patents at issue in this case,
which experts and discovery may help clarify.

[23] *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325-
27 (Fed. Cir. 2009).

[24] See *ResQNet.com*, 594 F.3d at 877.

settlement agreement should be admitted at trial as "uniquely relevant and reliable" evidence of a reasonable royalty.[25]

For the reasons discussed above, Toyota's motion for reconsideration will be denied.

### III. The Defendants' Motions to File Amended Invalidity Contentions

The Defendants moved to file second, third, and fourth amended invalidity contentions. ECF Nos. 256, 429, 454. Under Local Rule 804.6, a party may amend its invalidity contentions "upon written consent of all parties or, for good cause shown, upon leave of the Court." *See* Local Rule 804.6. Here, the Plaintiffs have not consented,[26] so the Defendants must show good cause.[27]

"Good cause" requires a showing of diligence. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366

---

[25] The Court also will not address Toyota's premature argument that it would be unfair to allow Abell *to introduce* the settlement agreement in a trial in which Paice is also a plaintiff. *See* ECF No. 390 at 9.

[26] *See* ECF Nos. 309, 448, 463.

[27] *See, e.g., Veolia Water Solutions & Techs. Support v. Siemens Indus., Inc.*, No. 5:11-CV-00296-FL, 2013 WL 2149209, at *2 (E.D.N.C. May 16, 2013) (local rule in Eastern District of North Carolina allows amendment upon a showing of good cause); *Nautilus Neurosciences, Inc. v. Wockhardt USA LLC*, No. 11-1997-ES-SCM, 2013 WL 7901901, at *2 (D.N.J. Jan. 23, 2013) (District of New Jersey local rule requiring a showing of good cause to amend invalidity contentions); *Fleming v. Escort, Inc.*, No. CV-09-105-S-BLW, 2011 WL 1542126, at *2 (D. Idaho April 21, 2011) (District of Idaho local rule requiring showing of good cause).

(Fed. Cir. 2006).  The burden is on the moving party to establish diligence.  *Id*. at 1366.  Local patent rules are designed to "require the parties to crystallize their theories of the case early in the litigation so as to prevent the shifting sands approach to claim construction."  *O2 Micro Int'l*, 467 F.3d at 1364 (internal quotation marks and citations omitted).  The patent rules "seek to balance the right to develop new information in discovery with the need for certainty as to legal theories."[28]  *Id*. at 1366.

A. Second Amended Invalidity Contentions

The Defendants seek to add "the patents-in-suit lack written description and have improper inventorship" to their invalidity contentions.  ECF No. 256-1 at 1.  The Plaintiffs argue that the Defendants failed to show diligence, and the amendments are futile.  ECF No. 309 at 5.

All patents-in-suit are related to a provisional patent application filed on September 14, 1998.  *Id*.  The provisional application did not include the terms "road load," "instantaneous torque requirements," or specific set points

---

[28] As the Court described in a previous memorandum opinion, "the Court has not found, any cases applying Local Rule 804.6 in the context of amending invalidity contentions." ECF No. 399 at 7. Courts in other jurisdictions have found that "unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative." *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002).

claimed in the '672 patent.  *See* ECF Nos. 256-1 at 6; 309 at 18-19.  The provisional application is publically available.  ECF No. 309 at 5.

On May 20, 2013, discovery opened in this case.  *Id.*  On August 13, 2013, the Defendants served the Plaintiffs with their invalidity contentions.[29]  ECF No. 429-1 at 2.  On October 31, 2013, through discovery, the Plaintiffs provided the Defendants with "a number of prior deposition transcripts of Dr. [Alex] Severinsky,[30] including extensive testimony on Paice's prior relationship with Lockheed Martin" and other documents.  ECF No. 309 at 5-6.[31]

On January 8, 2014, the Defendants informed the Plaintiffs that they planned to depose Dr. Severinsky.  *Id.* at 6.  On January 30, 2014, the Defendants served their deposition notice.  *Id.*  The deposition was on May 9, 2014.  *Id.*  During the deposition, Defendants' counsel asked Dr. Severinsky if "road

---

[29] In their opposition, the Plaintiffs mistakenly state that the Defendants served invalidity contentions on August 6, 2013.  *See* ECF No. 309 at 5.  This was the date invalidity contentions were originally due; however, the Defendants requested an extension and served invalidity contentions on August 13, 2013.  *See, e.g.,* ECF Nos. 429-1 at 2; 448 at 3 n.1.

[30] Dr. Severinsky is the inventor of the patents-in-suit.  ECF No. 256-1 at 1.

[31] One of the documents provided to the Defendants was attached as an exhibit to Dr. Severinsky's deposition and was cited by the Defendants in their motion for leave to file second amended invalidity contentions.  *See* ECF No. 309, at 5, Ex. 2.

load," "instantaneous torque requirements," or specific set

points appeared in the provisional application. ECF No. 309,

Ex. 3 at 190:8-9. Defendants' counsel stated that he had

performed a word search for the terms, and they were not

present. *Id.* Dr. Severinsky confirmed that those specific

terms were not in the provisional applications, but explained

that a person of skill in the art would understand that the

concepts were disclosed in the provisional application. *See,*

*e.g., id.* at 175:25 -176:13.

Additionally, Defendants' counsel asked Dr. Severinsky

about a document provided by the Plaintiffs on October 31, 2013.

*Id.* at 190:8-9 ("So, Dr. Severinsky, I think you may have seen

this document in some of your prior depositions.") The document

related to Paice's relationship with Lockheed Martin. *Id.* Dr.

Severinsky explained Lockheed's involvement with the development

of the patents.[32] *See id.* at 192:9-198:21. On May 30, 2014,[33]

the Defendants filed for leave to serve second amended

invalidity contentions. ECF No. 256. The Defendants assert

---

[32] The Defendants assert that the deposition testimony
establishes that Lockheed Martin "contributed to the conception
of the invention," and was therefore an inventor. ECF No. 353
at 11. The Plaintiffs argue that Dr. Severinsky clearly
described Lockheed Martin's involvement as that of merely aiding
in perfecting the invention, and noted that the exhibit the
Defendants used to establish Lockheed's involvement was made
after the provisional patent application was filed. ECF No. 309
at 20-23.

[33] May 30, 2014 was the last day of fact discovery.

that Dr. Severinsky's deposition revealed that the patents-in-suit were invalid for lack of written description because "road load," "instantaneous torque requirements" and specific set points were not in the application, and the patents had improper inventorship because they did not include Lockheed Martin.  ECF No. 256-1 at 1, 6.

The Defendants have not carried their burden to show diligence.  Although the Defendants filed their motion within three weeks of Dr. Severinsky's deposition, the Defendants offer no explanation why they did not attempt to depose Dr. Severinsky before filing their original invalidity contentions or after October 31, 2013 when they received information from Dr. Severinsky's prior depositions about Lockheed Martin's involvement.  That "road load," "instantaneous torque requirements" and specific set points were not part of the provisional application was available as part of a public document, and the Defendants' counsel stated at the deposition that the Defendants had performed a prior word search that revealed this fact.  *See* ECF No. 309, Ex. 3 at 190:8-9.  Even if the Defendants required Dr. Severinsky's testimony to confirm this fact,[34] they have not explained why they waited until

---

[34] *Compare Symatec Corp. v. Veeam Corp.*, No. C 12-00700 SI; 12-05443, 2013 WL 3490392, at *2-3 (N.D. Cal. July 11, 2013) (although some information was available in public documents, the defendant required more discovery to make their argument in

January 30, 2014 -- near the end of discovery -- to request Dr.
Severinsky's deposition. *Cf. Nautilus Neurosciences, Inc. v.*
*Wockhardt USA, LLC*, No. 11-1997 (ES)(SCM), 2013 WL 7901901, at
*7 (D.N.J. Jan. 23, 2013) ("Diligence does not exist where
Defendants uncover the basis of an invalidity defense during the
claim construction process if they could have done so prior to
filing their invalidity contentions.").

Similarly, the Defendants had information about Lockheed
Martin on October 31, 2013, but waited three months to request
the deposition. *See* ECF No. 309 at 5-6. Without any
explanation from the Defendants for the delay, there is an
apparent lack of diligence. Dr. Severinsky did not reveal any
entirely new information, and the Defendants should have acted
soon after learning of Lockheed Martin's involvement. *See O2*
*Micro Int'l*, 467 F.3d at 1366 (parties must amend their
contentions promptly after discovering new information in order
to "crystallize their theories of the case early in the

---

good faith and filed for leave to amend its invalidity
contentions within three weeks of the plaintiff providing the
discovery material), *with Barco N.V. v. Tech. Props. Ltd.*, No.
5:08-cv-05398 JF/HRL, 2011 WL 3957390, at *2 (N.D. Cal. Sept. 7,
2011) ("[I]t appears that Barco should have been able to assert
its lack of enablement theory based on the '749 and '890
patent specifications alone. These specifications have been
known to Barco for years, and certainly were available to Barco
well before it served its preliminary invalidity contentions in
April 2009. At that time, Barco chose to challenge other
aspects of the written descriptions of the patents-in-suit, but
it brought no challenge with respect to the [] theory it
advances now.").

litigation" and "prevent the shifting sands approach to claim construction"); *see also Nautilus Neurosciences*, 2013 WL 7901901, at *7.

Accordingly, the Defendants' motion to file second amended invalidity contentions will be denied.

B. Third Amended Invalidity Contentions

The Defendants seek to amend their claim charts to add contentions "based on two recently authenticated prior art references from prior litigations between Paice and Toyota -- 'Toyota Press Information '97' (TPH0006745) and 'Prius New Car Features' (TPH0001598)."   ECF No. 429-1 at 2.

In their original invalidity contentions, the "Defendants identified the 'Toyota Prius' as a 'Prior art hybrid vehicle[] that may anticipate or render obvious one or more asserted claims . . . .'"  *Id.* (quoting ECF No. 429-12 at 68).   The Defendants also incorporated by reference "all prior art references cited in the Patents-in-Suit, their prosecution histories, reexamination histories, and all references cited therein."   ECF No. 429-12 at 4.   The '634 patent and the '347 patent list the two prior art reference at issue here in their References Cited sections.   *See* ECF No. 429-1 at 2-3.

On May 21, 2013, the Defendants requested that the Plaintiffs produce "technical and financial documents" from the Paice/Toyota Litigations.   *Id.* at 3.   The Defendants repeatedly

requested these materials over the next eight months.[35]  *Id.*  In
December 2013, the Plaintiffs produced claim charts and
interrogatory responses from the Paice/Toyota Litigations, but
did not include the two prior art references at issue.[36]  *Id.*

On January 22, 2014, the Defendants filed a motion to
compel the production of "technical and financial documents in
Plaintiffs' possession from the Paice/Toyota Litigations."  *Id.*
at 4; *see also* ECF No. 108-1.  On January 28, 2014, Toyota moved
to intervene.  ECF No. 111.  "Toyota also filed a contingent
cross-motion to disqualify [the] Defendants' counsel, Quinn
Emanuel Urquhart & Sullivan, LLP from representing [the]
Defendants if Toyota documents were ordered produced, based on
the prior role of one of [the] Defendants' attorneys as an
attorney for Toyota . . . ."  ECF No. 429-1 at 4.

On March 12, 2014, Defendants subpoenaed Toyota for the
financial and technical documents, "and also demanded that
Toyota produce a corporate witness to testify about
authenticity, content, and circumstances related to the
documents demanded."  *Id.*  Toyota moved to quash the subpoenas.

---

[35] These requests included a telephone hearing before Magistrate
Judge Gauvey about the problems with document production.  ECF
No. 429-1 at 3.

[36] The Plaintiffs assert that they "produced the two Toyota
references to [the] Defendants in *August 2013*."  ECF No. 448 at
6 (citing ECF Nos. 448-1, 448-2 (letters from Plaintiffs to
Defendants about discovery)).  The Defendants do not address the
Plaintiffs' contention in their reply.  *See* ECF No. 452.

ECF No. 163.   In April 2014, Toyota and the Defendants reached an agreement in which the Defendants withdrew their subpoena in exchange for Toyota withdrawing its objection to the Defendants' counsel and producing certain litigation documents.[37]   ECF No. 171.   Toyota also agreed to provide deposition testimony to authenticate the documents.   *Id*.   On April 15, 2014, the Defendants received from Toyota the two prior art references at issue.   ECF No. 429-1 at 5.

On May 29, 2014, the Defendants served on Toyota notice of deposition by written question.   *Id*.   On July 8, 2014, the Court extended fact discovery until July 31, 2014 so that Toyota would have time to respond.   ECF No. 358.   At the end of July, the Defendants, the Plaintiffs, and Toyota "engaged in negotiations regarding a stipulation to authenticate certain produced documents, in lieu of proceeding with the deposition of the Toyota entities."   *Id*.   On August 6, 2014, the parties and Toyota filed a proposed stipulation, which was approved by the

---

[37] The Plaintiffs assert that the discovery dispute between Toyota and the Defendants was not about the two prior art references, but was centered on the Paice/Toyota settlement agreement.   *See* ECF No. 448 at 6.   The Defendants argue that the prior art references were part of the dispute and cite to the August 6, 2013 stipulation between the parties and Toyota which specifically mentions the two prior art references.   ECF No. 452 at 1-2.   According to the Defendants, "[p]rior to the resolution of the dispute between the parties, in which Toyota intervened and filed a motion to disqualify Defendants' counsel, it was not apparent whether the references at issue could be used in this litigation without risking disqualification of their chosen counsel."   *Id*. at 2.

Court.  ECF Nos. 413, 415.  The parties and Toyota stipulated that the two prior art references at issue would be considered authentic.  ECF No. 413 at 2.  Two weeks after the stipulation was entered, the Defendants filed this motion for leave to amend their invalidity contentions to include the two prior art references.  ECF No. 429.

The Plaintiffs argue that the Defendants cannot carry their burden of diligence because they were aware of the prior art references before the original invalidity contentions were filed,[38] and the discovery dispute with Toyota was about the settlement agreement and not the prior art references.  ECF No. 448 at 6-7.  The Plaintiffs also assert that, even if the Defendants diligently sought the prior art references, Toyota provided the references in April, and the Defendants did not seek leave to amend until August.  *See id*. at 10-11.  The Plaintiffs argue that the authentication of the references is irrelevant to amending invalidity contentions, and the Defendants were not diligent when they delayed.  *See id*.

The record shows that from May, 2013 until production of the prior art references, the Defendants actively sought discovery of the Paice/Toyota litigation materials.  *See* ECF No. 429-1 at 3-5.  The Defendants did not immediately file to amend

---

[38] The references were listed on the face of the patents at issue.  ECF No. 448 at 7.

their invalidity contentions when they received the prior art references. *See* ECF No. 448 at 10-11.   However, unlike their motion for second amended invalidity contentions, the Defendants do offer a reason for their four-month delay.   The Defendants needed to insure that Toyota fulfilled its authentication agreement before the Defendants put forth the prior art references, or the Defendants risked a dispute with Toyota that may have disqualified the Defendants' chosen counsel. *See* ECF No. 452 at 1-3.   Although authentication is usually an issue for trial, this unique discovery dispute also raised an ethical issue.   For months, the Defendants consistently moved toward resolution of this issue, including negotiations in which the Plaintiffs took part. *See* ECF No. 429-1 at 5-6.   Nothing on the record shows that this delay was an attempt at gamesmanship. *See Golden Hour Data Sys., Inc.*, 2008 WL 2622794, at *4 ("There is no indication that gamesmanship motivated HSI's decision to wait until this juncture to supplement its Preliminary Invalidity Contentions.").   Under the unique circumstances of this case, the desire to determine the case on the merits,[39] and the Defendants' prompt filing of this motion as soon as the dispute was resolved, the Defendants were sufficiently diligent in obtaining the prior art references.

---

[39] *See Golden Hour Data Sys., Inc. v. Heath Servs. Integration, Inc.*, No. C 06-7477 SI, 2008 WL 2622794, at *4 (N.D. Cal. July 1, 2008).

Additionally, including the prior art references will not prejudice the Plaintiffs.[40]  The Defendants incorporated the references into their original invalidity contentions, and the contentions mentioned the Toyota Prius.[41]  ECF No. 429-12 at 4, 68.  The references were part of the prior litigation between Paice and Toyota,[42] and the Plaintiffs were involved in the July negotiations that involved the two prior art references.[43]

Accordingly, the Court will grant the Defendants' motion.

---

[40] *Classen Immunotherapies, Inc. v. Biogen Idec*, No. WDQ-04-2607, 2013 WL 680379, at *5 (D. Md. Feb. 22, 2013) (permitting the defendant to amend invalidity contentions because there would be no waste of resources and no prejudice).

[41] *See Golden Hour Data Sys., Inc.*, 2008 WL 2622794, at *4 (in a conservative amendment jurisdiction, the defendant could amend invalidity contentions because it did "not raise new issues but instead merely supplement[ed] its initial contentions," and the plaintiff "was already on notice regarding the substance of [the] proposed amendments"); *cf. Breville Pty Ltd. v. Storebound, LLC*, No. 12-cv-01783-JST, 2013 WL 1758742, *1-2 (N.D. Cal. April 24, 2013) (denying a motion to amend invalidity contentions because it was merely an attempt to assert a new argument); *L.C. Eldridge Sales Co. v. Azen Mfg. Pte., Ltd.*, No. 6:11cv599, 2013 WL 7937026, at *3-5 (E.D. Tex. Oct. 11, 2013) (defendants could not amend invalidity contentions to include prior art references that were on the face of the patents-in-suit and were not part of, or incorporated in, the defendants' original contentions).

[42] *See* ECF Nos. 448 at 11-12; 452 at 3.

[43] *See* ECF No. 413.

C. Fourth Amended Invalidity Contentions

The Defendants seek leave to amend their claim charts and add claim charts after the Court's claim construction ruling. ECF No. 454-1 at 1.  Specifically, the Defendants request to 1) remove claims and references to those claims that the Plaintiffs no longer assert;[44] 2) "[a]dd a disclosure to the claim limitations relating to 'road load' to take into account the Court's construction of the term and the potential ambiguities left in the term;" change the claim limitations relating to max torque output ("MTO") to address the Court's claim construction; and 4) "[a]dd two claim charts for two new prior art references, which are disclosed in Ford's *inter partes* review requests and [the] Defendants have added based on the Court's construction of the terms 'road load' and 'MTO.'"  *Id*. at 7.

On June 13, 2013, the Court issued a scheduling order.  ECF No. 53.  The scheduling order allowed a party to file a motion to amend contentions "within 60 days of the Court's claim construction ruling."  *Id*. at 7.  On January 14, 2014, the Court held a *Markman* hearing.  ECF No. 106.  On July 24, 2014, the Court issued its claim construction findings on six disputed claim terms, including "road load" and "MTO".  ECF Nos. 399-400.

---

[44] The Plaintiffs have no objection to the Defendants removing irrelevant contentions.  ECF No. 463 at 5.

1. Road Load Amendments

In construing "road load," the Court rejected the Defendants' proposed construction[45] and adopted the Plaintiffs' definition that road load was "the instantaneous torque required for propulsion of the vehicle, which may be positive or negative in value."[46]   ECF No. 399 at 15.   One of the conflicts between the parties was that the Defendants wanted to include that road load was the "amount of torque *actually required* to propel the vehicle."   *Id.* (emphasis added).   At the *Markman* hearing, the "Plaintiffs alleged . . . that the *derivation* of 'road load,' as opposed to what 'road load' *is*, can include other additional inputs and calculations based on a 'map.'"   ECF No. 454-1 at 4 (citing *Markman* Hr'g Tr. at 99:8-100:9 ("[T]hey're trying to conflate what road load is with the way road load is derived.")).   According to the Defendants, including "actually required" would "exclude[] torque values output by 'maps' based on metrics such as vehicle speed and accelerator position."[47]

---

[45] "[T]he amount of torque actually required to propel the vehicle on the road to maintain a given speed, which may be positive or negative in value."   ECF No. 399 at 15.

[46] The Court found that the Plaintiffs' construction was sufficiently clear and supported by the specification.   *Id.* at 15-18.

[47] "For example . . . the '347 patent distinguish[es] 'road load' from 'vehicle driving torque demand' in the Egami patent that is determined by 'consulting a 'map', using 'the vehicle speed V, the accelerator life ACC, the brake state BRK, and the shift

*Id.* at 18; *see also* ECF No. 79 at 24-25.  The Court found that "actually required" did not clarify the meaning of "road load," and the claim language was sufficiently clear.  ECF No. 399 at 18-19.

The Defendants argue that they need to amend their invalidity contentions to address the Plaintiffs' interpretation of road load and the Court's ruling.  ECF No. 454-1 at 5.  The Defendants assert that although the Court held that the definition of "road load" was clear, the "Plaintiffs' application and use of the term is not."[48]  *Id.*  The Defendants contend that the Court's construction "allows for two possible interpretations: 1) *only* the instantaneous torque required for propulsion of the vehicle (that is, torque only); or 2) the instantaneous torque requires for propulsion of the vehicle *as modified* in response to other considerations, such as vehicle

_____

position SFT as the input parameters.'"  ECF No. 399 at 18 (quoting '347 patent col. 14:54-65).

[48] The Defendants assert that the "Plaintiffs' characterization of the distinction between 'road load' and its derivation was neither known nor reasonably ascertainable at the time Defendants severed their initial invalidity contentions; Plaintiffs did not even raise or otherwise describe the distinction in [their] claim construction briefing."  ECF No. 454-1 at 5.  The Plaintiffs assert that the distinction between what road load is "and how 'road load' is used by the control system" was included in their Responsive Claim Construction brief.  ECF 463 at 19; *see also* ECF No. 90 at 7-9. Additionally, the Plaintiffs assert that what they argued "road load" was at the *Markman* hearing is irrelevant -- the Court's construction and not the Plaintiffs' argument controls.  *See* ECF No. 463 at 18.

speed or transmission gear . . . .", and the Defendants should be permitted to amend their invalidity contentions "to cover the alternative interpretations . . . ." ECF No. 454-1 at 11.  The Plaintiffs assert that the Court's interpretation was clear and that the Defendants did not show good cause or diligence.  ECF No. 463 at 15-20.

The Defendants argue that they were diligent because they filed within 60 days of the claim construction order.[49]  ECF 454-1 at 10-11.  However, the Court's scheduling order requires the Defendants to show good cause and diligence in *addition* to filing their motion within the 60 days.  *See* ECF No. 53 at 7; *see also Synopsys Inc. v. Mentor Graphics Corp.*, No. C-12-06467-MMC(DMR), 2014 WL 1477917, at *2 (N.D. Cal. April 4, 2014) ("The Patent Rules expressly recognize that amendment of invalidity contentions may be appropriate where the Court adopts a claim construction different from that proposed by the party . . . . However, the Court's differing claim construction in and of itself does not constitute good cause, and the moving party must

---

[49] The Defendants argue that "[c]ritically, [the] proposed amendment are all directly tied to the Court's claim construction order . . ." ECF No. 472 at 2.  However, simply connecting a proposed amendment to the Court's claim construction is insufficient. *See, e.g., Synopsys Inc.*, 2014 WL 1477917, at *2; *CoreLogic Info. Solutions, Inc. v. Fiserv, Inc.*, No. 2:10-CV-132-RSP, 2012 WL 4051823, at *1 (E.D. Tex. Sept. 13, 2012).  The Defendants must show that the Court's construction was in some way surprising and unforeseeable. *See CoreLogic Info. Solutions*, 2012 WL 4051823, at *1.

still establish its diligence.") (internal quotation omitted)).

The Defendants have not carried their burden to show good cause

and diligence.

The Court's definition of road load was clear.  The

construction of "road load" adopted by the Court was identical

to the definition in the Plaintiffs' claims,[50] was contained in

the specification,[51] and was the definition of "road load"

adopted by two prior courts.[52]  Therefore, the Defendants have

not shown why the Court's construction was surprising and

requires amendment of their invalidity contentions.  *See, e.g.*,

*CoreLogic Info. Solutions, Inc. v. Fiserv, Inc.*, No. 2:10-CV-

132-RSP, 2012 WL 4051823, at *1 (E.D. Tex. Sept. 13, 2012)

("Without an adequate explanation of what in particular was

unexpected in the Court's claim construction ruling, Defendants

have not justified their late disclosure.").

Additionally, the Plaintiffs described the difference

between calculating road load and its definition in their claim

construction briefing.  ECF 463 at 19; *see also* ECF No. 90 at 7-

---

[50] *See* ECF No. 399 at 15-19; *see also* '672 patent at claim 15;
ECF No. 463 at 16.

[51] *See* '672 patent at col. 28:58-61; ECF Nos. 399 at 15, 19; 463
at 16.

[52] *See Paice LLC V. Toyota Motor Corp.*, No. 2:07-CV-180(DF), 2008
WL 6822398, at *8 (E.D. Tex. Dec. 5, 2008); *Paice LLC V. Toyota
Motor Corp.*, No. 2:04-CV-211-DF, 2005 WL 6220101, at *22-23
(E.D. Tex. Sept. 28, 2005).

9.  Even if the Court were to assume that the Defendants heard this argument for the first time during the *Markman* hearing, the Defendants have offered no explanation why they waited over eight months to file their motion.  *See Synopsys Inc.*, 2014 WL 1477917, at *2 (finding a lack of diligence when the defendant waited seven months to file its motion after receiving the plaintiff's claim construction briefing).

Accordingly, the Defendants' motion to amend their invalidity contentions relating to "road load" will be denied.

### 2. MTO Amendments

In the MTO claim construction ruling, the Court rejected the Defendants' construction.[53]  Although the Court rejected the Plaintiffs' argument that "the plain and ordinary meaning" of MTO should control, the Court did accept the Plaintiffs' definition of MTO as "the maximum amount of torque that the engine can produce efficiently."[54]  ECF No. 399 at 31-34.  The

---

[53] The Defendants' construction was that MTO is "the maximum amount of torque that the engine can physically produce."  ECF Nos. 79 at 42; 399 at 31.

[54] The Plaintiffs defined MTO as "the maximum amount of torque that the engine can produce efficiently" at the *Markman* hearing and in their Responsive Brief on Claim Construction.  ECF Nos. 90 at 30; 463 at 17.  The Court analyzed and adopted this definition.  ECF No. 399 at 34.  The Court merely disagreed that the Plaintiffs' construction was "the ordinary and plain meaning" of MTO.  *Id.* at 31-32.  The Defendants admit that "the Court's construction matches what [the] Plaintiffs argued for at the *Markman* Hearing, and what [the] Plaintiffs apparently believe MTO to mean . . . ."  ECF No. 454-1 at 6.

Defendants argue that "this construction was not readily discernible to [the] Defendants prior to claim construction, as [the] Plaintiffs' Infringement Contentions for each accused vehicle merely identifies the rated maximum torque for that engine in relation to 'MTO' -- a value that is clearly not the engine's maximum 'efficient torque output.'"   ECF No. 454-1 at 6.   The Defendants assert that they could not address this construction until the Court issued its claim construction ruling.   *Id.*

The rules and the scheduling order allow for amending invalidity contentions after the claim construction ruling so that parties can address any Court constructions that are surprising or could not have been foreseen.[55]   That is not the case here.   Although the Plaintiffs called their construction of

---

[55] *See, e.g., Mass Engineered Design, Inc. v. Egotron, Inc.*, 250 F.R.D. 284, 286 (E.D. Tex. 2008) (allowing amended invalidity contentions when the Court merely adopts the plaintiff's definition "would encourage future accused infringers to propose narrow constructions focused on non-infringement while sidelining potential invalidity defenses until the Court issues its claim construction opinion. Such gamesmanship is not tolerated in this Court, and the Court's rules are intended to avoid this type of chicanery"); *CoreLogic Info. Solutions, Inc.*, 2012 WL 4051823, at *1; *Finisar Corp. v. DirectTV Grp., Inc.*, 424 F. Supp. 2d 896, 901-02 (E.D. Tex. 2006) ("A party cannot argue that because its precise proposal for a construction of a claim term is not adopted by the court, it is surprised and must prepare new invalidity defenses to meet claims of infringement. In the first place, courts seldom simply adopt the construction of one party or the other. Secondly, accepting such an argument would encourage parties to file narrow proposed constructions with an eye towards hiding important prior art until shortly before trial.").

MTO "the plain and ordinary meaning," they consistently defined
MTO in accordance with the Court's construction ruling. *See* ECF
Nos. 90 at 30; 463 at 17. The Court did not adopt a new
construction of MTO of which the Defendants were not aware. *See*
*Mass Engineered Design, Inc.*, 250 F.R.D. at 286 ("This is not a
situation where the Court issued constructions that greatly
differed from what the parties proposed. Rather, the Court
adopted all of DMLP's proposed constructions, without major
modification."). At the very least, the Defendants should have
filed a motion to amend their invalidity contentions after the
*Markman* hearing, when they agree that the Plaintiffs argued this
exact definition of MTO.[56]

Accordingly, the Court will deny the Defendants' motion to
amend their invalidity contentions relating to MTO to reflect
the Court's construction.

---

[56] ECF No. 454-1 at 6; *see Vernata Health, Inc. v. Sequenom,
Inc.*, No. C 12-00865 SI, 2014 WL 789197, at *2 (N.D. Cal. Feb.
26, 2014) ("For most of the constructions that differed from
Sequenom's proposed constructions, the Court simply adopted the
constructions proposed by Verinata. Sequenom was given notice
of these proposed constructions by at least October 26, 2012
when the parties exchanged their preliminary claim
constructions. Therefore, Sequenom was aware of the risk that
the Court could adopt these constructions by October 2012, yet
it waited until more than a year later to seek amendment of its
invalidity contentions.") (internal citations omitted);
*CoreLogic Info. Solutions, Inc.*, 2012 WL 4051823, at *1.

3. Adding Claim Charts for New Prior Art References

The final portion of the Defendants' motion asserts that the Defendants should be permitted to add two prior art references[57] to their invalidity contentions based on the Court's claim construction ruling. ECF No. 454-1 at 11. "Both additional references were cited by Ford in the pending *inter partes* review of [the] Plaintiffs' patents and were selected to address arguments that have arisen in connection with the claim construction proceedings in this action and the *inter partes* review process. *Id*. at 11-12.

The Defendants never state when they became aware of these prior art references or how they acted diligently in acquiring the materials. *See* ECF No. 454-1 at 12-13; *see also Positive Techs., Inc. v. Sony Elec., Inc.*, No. C 11-2226 SI, 2013 WL

---

[57] The two prior art references are "Hybrid Power Unit Development for Fiat Multiple Vehicle" by A. Caraceni (published Feb. 23, 1998) and the Bumbly Project, a "series of publications from the 1980's that pertain to a hybrid vehicle research and development project . . . ." ECF No. 454-1 at 12. The Plaintiffs clarify that the Bumbly Project is not a single reference, but five publications "published over the course of five years, in three publications, written by overlapping but different sets of authors . . . ." ECF No. 463 at 25. Additionally, the Plaintiffs assert that they produced the Caraceni reference to the Defendants in July 2013, and the Bumbly references are listed on the face of another patent cited as a prior art reference by the Defendants. ECF No. 463 at 13.

The Plaintiffs also note that although the Defendants' motion only discusses these two new prior art references, their amended invalidity contentions include another new reference ("Vittone"). ECF No. 463 at 5; *see* ECF No. 454-4 at 9. Because the Defendants never explained why it should be added, the Court will not permit any amendments that include this reference.

322556, at *2 (N.D. Cal. Jan. 28, 2013) ("At the outset, the Court notes that the diligence required for a showing of good cause has two phases: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered."). The Defendants merely argue that the materials are important to their case, and the Plaintiffs would not be prejudiced by their addition. *Id*. at 14-18. This, however, is not sufficient.

Both of the prior art references were published long before the Defendants filed their invalidity contentions. *See* ECF Nos. 454-1 at 12; 463 at 13. Further, the Plaintiffs produced the Caraceni reference to the Defendants in July 2013, and the Bumbly references are listed on the face of another patent cited as a prior art reference by the Defendants. ECF No. 463 at 13. The Defendants knew or should have known of these references long before this motion. *See L.C. Eldrige Sales Co. v. Azen Mfg. PTE., Ltd.*, No. 6:11cv599, 2013 WL 7937026, at *2-5 (E.D. Tex. Oct. 11, 2013). The Defendants' central argument is that they could not have anticipated the need for these references before the Court's construction ruling. *See* ECF No. 454-1 at 11-12. However, the Court has rejected the argument that its construction of road load and MTO were a surprise to the Defendants. Accordingly, the Court will deny the Defendants'

request to add two new claim charts with these prior art references.[58]

Because the Plaintiffs do not object to the Defendants' request to remove irrelevant invalidity contentions, the Court will grant that request. However, for the reasons previously discussed, the Court will deny all other portions of the Defendants' motion.

IV.   Conclusion

For the reasons stated above, Toyota's motion for reconsideration will be denied, and the Defendants' motions to amend their invalidity contentions will be granted in part and denied in part.

_____10/29/14_____
Date

_____
William D. Quarles, Jr.
United States District Judge

---

[58] *See, e.g., Catch a Wave Tech., Inc. v. Sirius XM Radio, Inc.*, No. C 12-05791 WHA, 2014 WL 186405, at *2 (N.D. Cal. Jan. 16, 2014) ("[The] Defendant argues that the reference 'only became relevant' as plaintiff's claim construction position expanded to cover television and digital transmission . . . . The rules do not state that defendants can limit themselves to only references they believe are relevant to plaintiff's read of the patent.  Defendant could have (and perhaps should have) charted the reference but defendant did not. Defendant must now live with that choice."); *L.C. Eldrige Sales Co.*, 2013 WL 7937026, at *5 ("The Contested Prior Art is listed in the '828 patent. Thus, Defendant had notice of the relevant prior art since the suit began.  Only Defendant's delay in accessing the importance of the contested prior art explains its failure to include this prior art in its invalidity contentions.").